### January Term, 1829.

*Guy Catlin* vs. *Lemuel Hayden*, and *Guy Catlin* vs. *Oliver Bliss.*

That the landlord of a tenant at will, which has run into a tenancy from year to year, cannot maintain trespass for an injury to the freehold.

Each of these was an action of *Trespass quare clausum fregit*, for cutting timber on lot No. 167, in *Essex*.   The first case was defective in not fully showing the nature of the contract under which one *Wiggins*, named in the case, took and held possession. This was supplied in the second, and the parties agreed that both

Chittenden, Jan. 1829. } should be [considered together, and alike,
*Catlin vs. Hayden et al.* } as to the important facts in the exceptions
allowed in both cases.

By the exceptions, it appears that the lot in question was set to the right of *Jacobus Bogart*, an original grantee, in the division of lands in *Essex*: and the plaintiff showed his title to said lot, by a deed from *Abraham Ives*, sheriff, and collector of a land tax, to *Ira Allen*, a deed from said *Allen* to *Silas Hathaway*, a deed from said *Hathaway* to *Jonathan* and *Elijah Ferris*, and a deed from said *Jonathan Ferris* to the plaintiff.

The plaintiff, also, to show himself in possession of the said lot, introduced a decree of the court of chancery, in which it was decreed that the plaintiff and one *Thaddeus Tuttle* were tenants in common of this and other lands in *Essex*; and also decreed how they should quit to each other, so as to perfect a division between them. This, however, was not completed till after the commencement of these suits. The plaintiff then adduced testimony tending to show that, in 1814, the said *Tuttle* agreed with one *Benjamin Wiggins*, that he should go on to said lot and make improvements on the same, and endeavor to prevent other people from committing trespasses on the same, and continue in possession till the disputes about said lands between the plaintiff and said *Tuttle* should be settled : and if, on that settlement, said lot should fall to said *Tuttle*, said *Wiggins* should have the privilege of purchasing said lot—That said *Wiggins* took possession, under said contract, and continued making improvements thereon till after the commencement of these suits.

The council for the plaintiff requested the court to instruct the jury, that if they believed said *Wiggins* took and held possession under said *Tuttle*, as above testified, and that the plaintiff and said *Tuttle* were tenants in common, as above mentioned, and if they found the defendant had committed the trespass complained of, the plaintiff was entitled to recover. The court refused so to instruct the jury ; and did instruct them, that if they should find, as last above mentioned, that would not show a sufficient possession of the premises in the plaintiff to maintain the action of *trespass quare clausum fregit*. The jury returned a verdict for the defendant in each case. Exceptions to the charge were taken by the plaintiff, and allowed by the court.

The arguments before the Supreme Court were intended for said first suit. { Chittenden; Jan. 1829. *Catlin* vs. *Hayden et al.*

*Adams and Van Ness, for the Plaintiff.* It may, for the purposes of this trial, be taken for granted, that plaintiff and *Tuttle* were tenants in common, and that *Wiggins* was in the lot as tenant at will. The question then is, whether under such a state of things, *Catlin* can maintain this suit ? It is conceded that the right to recover in tresspass is founded on the possession of the plaintiff. But we contend that the possession of tenant at will enures for the benefit of the landlord, and is, in law, the possession of the landlord. 6 *Com. Dig.* 389. So if tenant at will commit waste, the landlord may have tresspass.—*Ib.* To the same point is *Co. Lit.* 57. Action of trespass may be maintained by landlord against tenant at will.—3 *Johns. Rep.* 468, *Toby* vs. *Webster.* If the possession is in the landlord in this case, it must be in all, for the same possession is necessary in this as in other cases. See also *Cro. Ch.* 187, *West* vs. *Treude.*

Tenant at will cannot maintain trespass for any injury to the estate. It is undoubtedly true that he may sue for any injury to his possession—as loss of shade, &c. destroying his crops ; but he has no interest in the soil, trees, or the like. To allow him to sue and recover damages for the landlord, would be productive of great mischief. He could not be compelled to sue, and it would be hard to commit the interest of the landlord to the whim of his tenant. If he did sue, and recovered damages, there is no way in which the landlord could draw the money out of his hands.

The landlord cannot have *case* against those who should commit trespass during the possession of the tenant at will. *Case* lies where there is an injury to the reversion. Now, there cannot be any remainder after an estate at will. To make a remainder, there must be a particular estate precedent to the estate in remainder.— 2 *Bl. Com.* 165. Lease at will is not such an estate as will support a remainder.—3 *Bl. Com.* 166. An estate at will is so precarious that it is not considered as a portion of the inheritance.—3 *Bl. Com.* 166. The interest of the tenant at will is swallowed up in that of the landlord, he is the agent or servant of the landlord, and his possession is the possession of the landlord.

ZZ

Chittenden, Jan. 1829.  } Landlord can maintain trespass for any

Catlin vs. Hayden et al. } permanent injury to the estate, notwithstanding possession of tenant at will.   This doctrine is maintained from the earliest times, for which we have the authority of *Roll.* —*2 Rol. Ab.* 551.—*1 Vin. Ab.* 46, *Trespass, n.* 3.—4 *Com. Dig.* 389.—*Co. Lit.* 57, *a,* and 1 *Saund.* 322, *a, n.* 5.   For a full examination of these authorities, see the able argument of *Ch. J. Parker,* in the case of *Star* vs. *Jackson,* which was decided in 1814, (11 *Mass.* 521,) when this question was discussed and decided.   The case of *Biddeford* vs. *Onslow,* 3 *Lev.* 209, has no bearing on this point.   It was a proper action on the case.   The two cases from the state of *New-York, Campbell* vs. *Arnold,* 1 *Johns.* 511, and *Toby* vs. *Webster,* 3 *Johns.* 468, seem not to have been much considered.   The latter is founded on the first, while the first rests, among other cases, on that in *Levinz,* which clearly has no bearing.   The doctrine laid down in 1 *Chit. Pl.* 175, is undoubtedly correct ; but it is not a decision of the point in question.   The plaintiff must, no doubt, have the possession, and the inquiry is, whether the possession of his tenant is not his possession ? The subsisting lease, of which *Chitty* speaks, cannot mean a lease at will, but for years, or of some certain estate.   It happens in this case, as in a thousand others, that the authorities cited, and on which he relies, do not warrant his position, and indeed *most of* them are entirely foreign to the subject.

*Mr. Bailey, for the defendant.*   The first point in this case is, can the lessor of a tenant at will maintain an action of *trespass quare clausum fregit* for an injury done to the land by a stranger, during the continuance of the possession of the tenant ?   It is proposed to consider this question, *firstly,* upon general principles ; *secondly,* upon the ground of authorities.

1. It is laid down by every elementary writer, who treats of the remedies for injuries to real property, that *trespass quare clausum fregit* can be maintained only by him who had the actual possession of the premises, at the time the act complained of was committed.   In the case of a tenancy at will, the inquiry is, who has the actual possession ?   It is certain that the lessee has a possession sufficient to support trespass against a stranger, and even against the lessor himself.   The tenant's possession, then, must

be exclusive of that of the landlord, for $\left\{\begin{array}{l}\text{Chittenden, Jan. 1829.} \\ \text{Catlin vs. Hayden et al.}\end{array}\right.$ it would be absurd to say that where two have equal possession, one can have his action against the other for an injury to his possession. Originally, a lease at will was considered as a "mere executory contract, not " communicating any interest to the tenant in the thing demised." But for a great length of time the tenant has had a "*vested* " *interest* in the tenement," determinable at the will of himself, or of his landlord. While the estate continues, it possesses all the essential properties of an estate for years. The relation of land-lord and tenant subsists as completely in the one case as in the oth-er. The lessor transfers to the lessee the whole possession of the premises, or right to use, occupy, and enjoy them, in as full and ample a manner as himself could do. The tenant is entitled to emblements, if the landlord determine the estate. Rent may be, and is, reserved on leases at will. The difference between these two species of estate, consists principally in the nature of the tenure, or rather, in the method of determining them.— One expires by its own limitation, the other by the act of one of the parties. It has been repeatedly decided that tenant at will is entitled to notice to quit, before the landlord can *recover the pos-session* in ejectment. It cannot be said that lessor and lessee have a joint, or concurrent possession. Nor can the former main-tain trespass against the latter, except for an act which deter-mines the estate. From these premises, if correct, it necessarily follows, that the tenant has the actual and absolute possession. It is not pretended that the injury which the lessor sustains is a *violation of his possession,* which alone can support *trespass quare clausum fregit.* It is an injury to his *reversionary* interest: it is consequential, and the remedy is *case.* From analogy, and from principles, which are admitted, it seems to be clear, that the *tenant alone can maintain this action.*

2. As a question of authority, it is contended, that our proposi-tion is supported by a great majority of the adjudged cases. It was formerly held that a bare possession was not sufficient to maintain *trespass quare,* &c. and as that was all the tenant was supposed to have at that period, the action, of course, was brought in the name of the landlord.—*Ham. Nisi Prius,* 213. But after

Chittenden, Jan. 1829. } the tenant became clothed, in considera-
Catlin vs. Hayden et al. } tion of law, with a vested interest in the
land, of which he was in possession, he was allowed to bring the
action in his own name : and, says *Mr. Hammond*, at the present
day, the tenant at will *alone* can maintain the action.—*Id.* 213-
15-16. Whatever confusion or contrariety may be found in the
decisions on this subject may, doubtless, be attributed to "inat-
tention to the obsolete principle" upon which the landlord's right to
bring the action was founded. It has been said, and so proba-
bly is the law, that if a tenant at will cut down timber-trees, or
pull down houses, the lessor may have *tresspass vi et armis.*—
*Co Litt.* 57, *a.* So he may have this action against the grantee
of lessee who enters.—*Ib.* Trespass lies against the tenant at
will for voluntry waste, as cutting timber, &c.—7 *Johns.* 1,
*Philips* vs. *Covert.*—*Cro. Eliz.* 777, 784.—5 *Rep.* 14.—*Bul.
N. P.* 84. But in all these cases, the landlord's right to main-
tain trespass is placed wholly upon the ground, that the several
acts of the tenant enumerated *amount in law to a determination
of the tenant's will,* and, consequently, of his estate. This shows
plainly, that while the estate continues, this action cannot be sup-
ported.

But who shall bring the action of *trespass quare clausum fregit*
against a *stranger* who cuts down trees, or pulls down houses,
while the tenant is in possession ? In *Hargrave and Butler's
notes to Co.Lit.* 57,*a,n.c*, 78,it is said,"if a stranger cuts trees,the
" tenant at will shall have action, as shall also the lessor, regard
" being had to their several losses," and 2 *H.* 4, 12, 19. *H.* 6, 45,
and *Hale's* manuscripts are cited. No mention, however, is
made of the *form* of the action by lessor ; but from the words " re-
" gard being had to their several losses," it is reasonable to sup-
pose that an action *on the case* is referred to. In *Biddeford* vs.
*Onslow,* 3 *Lev.* 209, it was expressly decided, that *lessee* at will
*only* can maintain an action of trespass against a stranger, for an
injury done during the continuance of his possession ; and that, if
the reversion was injured also, the lessor's remedy is *case.* To
the same effect are *Sid.* 347, *Greary* vs. *Bearcroft*, and 2 *Rol.
Ab.* 551. If a man enter upon another's ground or into his

house without lawful authority, and do ⎰ Chittenden, Jan. 1829:
damage to his real property, the tenant ⎱ *Catlin* vs. *Hayden et al.*
in possession may have an action of *trespass quare clausum fregit,*
and the reversioner or remainder-man may have an action *on the
case,* if the trespass be an injury to his *reversionary* interest, as *cut-
ting down trees,* &c.—*Arch. Pl.* 15.—In all cases of trespass,
when the injury is not only to the tenant in possession, but also
to the inheritance generally, the *termor* may have a remedy by
action of *trespass,* and the *reversioner,* by action on the *case.*—
And in all other cases of injury to land, not amounting to an ous-
ter, the action must be brought, by the tenant in actual possession.
—*Ib.* 50.—Says *Mr. Chitty,* 1 *vol. Pl.* 176, a landlord cannot,
during a subsisting lease, support *trespass,* but the action must be
in the name of the *tenant,* or the *landlord* must proceed in *case ;*
and that a tenant for years, a *lessee at will,* and a tenant at suffer-
ance, may support trespass against a stranger, or even against his
landlord.    As to a tenant at sufferance having trespass against his
landlord, it is true that the contrary doctrine was held in *Wilde*
vs. *Cantillon,* 1 *Johns. Cas.* 123. Lessor cannot maintain *trespass
quare,* &c. against a stranger for cutting down trees, while there is a
tenant in possession ; the action must be brought by him in ac-
tual possession.—*Campbell* vs. *Arnold,* 1 *Johns. R.* 511.—Nor
against a subtenant at will of his lessee.—3 *Johns. R.* 468, *To-
by* vs. *Webster.*—To maintain this action there must be actual
possession.    A general property does not, in the case of real es-
tate, carry with it a constructive possession.—2 *Buls.* 268.—1
*Chit. Plead.* 176-7.—2 *Phil. Ev.* 132.—*Ham. N. P.* 163.—9
*Johns. R.* 61.—1 *do.* 511.—12 *do.* 183.—8 *Mass. R.* 411,
*Taylor* vs, *Townsend.*—Plaintiff must have an exclusive posses-
sion.—1 *T. R.* 430.—Trespass by owner will not lie for enter-
ing a pew, the possession of the church being in the parson.

There cannot be a *constructive,* in opposition to an *actual,* posses-
sion.    Of course, the person having the actual possession (the
tenant) must bring the action of *trespass quare clausum fregit.*

The case of *Star et al* vs. *Jackson,* 11 *Mass.* 519, in which it
was held, that both the landlord and tenant might have trespass
*quare,* &c. against a stranger, for cutting trees, subverting the soil,

Chittenden, Jan. 1829.  ⎰ or demolishing houses, is not support-
*Catlin* vs. *Hayden et al.* ⎱ ed, it is believed, by principle or au-
thority.   It expressly says, that the lessor is entitled to his ac-
tion, because these acts of trespass work a permanent injury to the
*freehold*, not to *lessor's possession*.   Now he who hath the *actual
possession*, as lessor *must* have to maintain trespass, cannot be, at
the same time, said to have the *reversion* of the same land.   It is
quite clear that the court did not sufficiently distinguish between
the respective interests of the lessor and lessee, and the appropri-
ate remedies for injuries to their different estates.   The same
court had decided, that no one could maintain this action, unless
he had, at the time of the act complained of, possession *in fact* of
the land.—8 *Mass. Rep.* 411, *Taylor* vs. *Townsend.*

In this case, however, there was at least a general occupation, or
holding by the tenant by permission of *Tuttle*, which is now held to
enure as a tenancy from year to year.—8 *East,* 165, *Doe ex dem.
Warner* vs. *Brown.*—*Adam's Eject.* 103; and in such case, it is well
settled, that the landlord cannot maintain trespass against a stran-
ger.   And though the court below in their charge to the jury
may have erred in their opinion upon an abstract or irrelevant
point of law, this court will not grant a new trial, if from the case
itself the party excepting is not entitled to it.—1 *Aik. R.* 43, *Ross*
vs. *Bank of Burlington.*—1 *Johns. C.* 250, *Goodrich* vs. *Walker.*
—3 *Johns. R.* 237, *Hyat* vs. *Wood.*—5 *Mass.* 1, *Brasier et al*
vs. *Clap.*—do. 101, *Jones et al* vs. *Fales.*—6 do. 350, *Newhall*
vs. *Hopkins.*

HUTCHINSON, J. delivered the opinion of the Court.   This be-
ing an action of trespass upon the freehold, it is a conceded point
that the plaintiff must have had possession of the premises at the
time the trespass was committed, or he cannot maintain the action.
Whether the testimony shows that he had such possession, is the
principal matter of dispute.   The plaintiff's counsel contend that
*Wiggins* was merely a tenant at will to *Tuttle,* and, therefore,
*Tuttle,* or his co-tenant, *Catlin,* can maintain this action—That,
for this purpose, the possession of *Wiggins* must be considered
the possession of *Tuttle* and *Catlin.*

The tenancy in common of *Tuttle* and *Catlin* is sufficiently shown

to place them on equal footing in point ⎰ Chittenden, Jan. 1829.
of possession ; at least, we so consider ⎱ *Catlin* vs. *Hayden et al.*
it in our present decision. Had the plaintiff, then, or had
*Tuttle*, such possession as will enable him to maintain this ac-
tion of trespass? The authorities have been presented on both
sides with a plausible application. The case cited by the plain-
tiff's council from the 11, *Mass. R.*, exhibits a thorough inves-
tigation of authorities, and produces the result that the owner of
the soil may maintain *trespass qua. clau. fre.* for an injury done
while a tenant at will is in possession of the premises. The court,
in making this decision suppose it directly opposed to the cases now
cited by the defendant's counsel from the first and third vol.
of *Johns. R.* It is not easy to ascertain, from the reports of
those cases, how far they should be governed by similar principles.
The case in the 3 *Johnson* is clearly a lease for years : and the
paintiff had not, in any sense, the possession or the right of posses-
sion, when the trespass was committed. In the case cited from
1 *Johnson*, it is said " that one A was in possession under the
plaintiff, to whose agent he paid rent." Now, this might have been
a direct lease for years ; or might have been running with a punc-
tual payment of the rent, till it had become a tenancy from year
to year. In both these cases the court decide that trespass will
not lie in favor of the landlord : but they say nothing about the
tenure, whether a tenancy at will or for years.

In the case cited from the 11 *Mass Rep.* the court treat the
case as technically a tenancy at will. The report states the case
to be, that one A took possession under a parol lease in May, and
continued to possess till November—That in May, while A was
in possession, the trespass was committed, and a similar trespass
the next season, without saying whether A was in possession the
second season, or whether his parol lease was, by its terms, to con-
tinue till the first November mentioned. We must presume it
indefinite in point of time at its creation ; for in such case only
would its terms indicate a tenancy at will, as it is treated by the
court. And the authorities upon which the court base their deci-
sion, are all cases of tenancy at will, properly speaking. Indeed,
they rely upon ancient authorities, and trace them back beyond the

Chittenden, Jan. 1829.    } period when tenancies at will were wont
*Catlin* vs. *Hayden et al.* } to be treated as tenancies from year to year.

If the case before us were a tenancy at will of the most absolute kind, so that the landlord might determine his will at pleasure, without previous notice, we should incline to follow the decision in *Mass. Rep.* But this is not such a case. *Wiggins* was a tenant at will, because the statute declares all estates created by parol, for more than a year, to be estates at will. Yet he was not liable to be turned out by *Tuttle* or the plaintiff, without a half years notice to quit. Not only was his tenancy, by the terms of it, to continue during the controversy between the plaintiff and *Tuttle* about these lands, but, after that, he had a right to purchase, and thereby retain possession. The statute, making all this a tenancy at will, does not deprive *Wiggins* of his right to half a year's notice of the determination of the will before he is obliged to quit the premises. During *Wiggins'* tenancy, so far from its being true that his possession was the possession of the plaintiff or *Tuttle*, they had no right to enter upon him at all without the half year's notice to quit: and such entry would be a trespass for which he might sue. The possession of *Wiggins* was the possession of *Tuttle* and *Catlin* in its effect in creating a title by fifteen years possession; but not so in dictating who may sue for a trespass upon the land. It is said the landlord may sue tenant at will for a trespass he commits upon the land. That is true: and the reason is, the tenant by the act of trespass determines his will, and destroys the very tenancy he wishes to set up in his defence.

In the case before us, the tenancy was in fact continued by the mutual assent of parties, and, until notice to quit, and the half year elapsed, *Wiggins* had as good a right to hold possession against his landlord, (he committing no trespass to determine his will) as if he held a lease for years that would expire at the end of said half year after notice to quit.

The judgment of the County Court is affirmed in both cases.

*Adams, Van Ness* and *Allen*, for plaintiff.

*Bailey* and *Marsh*, for defendant.