### RANSOM PHILLIPS *v.* DAVID DE GROAT.

(GENERAL TERM, SEVENTH DISTRICT, MARCH, 1869.)

Where the complaint averred a wrongful taking and carrying away, and conversion of the plaintiff's timber from certain described premises, and the answer denied the plaintiff's ownership of the *locus in quo*, and evidence had been admitted without objection on the trial, to prove injury to growing timber.—*Held*, that a cause of action for trespass to land was sufficiently pleaded.

By the terms of a contract for sale of timbered land, the vendee agreed that half of all the timber prepared for market, should be applied upon the purchase, and that he would not remove any timber without the vendor's consent, until the purchase money should be paid; he was to pay the taxes, and have a deed on full compliance with the terms of the contract; and on his failure to perform, it was provided that the vendor should have the right to take possession.—*Held*, that the vendee had a right of immediate entry, and though not in actual occupancy at the time, such constructive possession under the contract, as enabled him to maintain trespass against one who wrongfully cut timber on the premises.

*Held* further, the vendee having contracted for sale of the land, with reservation of the timber, and for its possession, "except so far as relates to the timber," that he could maintain trespass against one who entered under an assignee of his contract of sale, and cut down trees.

And that an action against such assignee, for the conversion of timber previously cut upon the premises, would lie by the said vendee by reason of his special property therein, and that if the effect of the agreement with his vendor, was to pledge the timber as security, he was entitled to show a waiver, or fulfillment of the conditions of the pledge

MOTION by plaintiff for new trial on exceptions. The facts are stated in the opinion.

Present—E. D. SMITH, JOHNSON and J. C. SMITH, JJ.

Phillips v. De Groat.

By the Court—JAMES C. SMITH, J.   The complaint alleges, in substance, that in the years 1866, 1867 and 1868, the plaintiff was the owner of certain timber, being on a piece of land in Lindley, Steuben county, therein described; and that during the time aforesaid, the defendant wrongfully took, carried away, and converted the said timber to his own use. The answer denies the complaint, and alleges property in third persons, and also in the defendant.

On the trial, at the Steuben circuit, in October, 1868, the plaintiff was nonsuited, and the question is, whether he had such possession or title, as was necessary to maintain the action.

It appeared at the trial, that on the 10th March, 1864, Gabriel F. Harrower contracted in writing to sell the plaintiff the premises described in the complaint, for the sum of $1,000, to be paid therefor by the plaintiff to Harrower; $100 down, and the remainder in six years by installments, with interest.   By the terms of the contract, Harrower reserved the right, "to go upon and occupy said premises for the purpose of fulfilling a certain contract made with Hayt & Towner, and Simeon Hammond.   It was also agreed by the plaintiff, that one-half of all timber cut, hewed, or in any manner prepared for market, should be applied upon the purchase, and that he would not remove any lumber or timber from said lot without Harrower's consent, until payment of all the purchase money.   The contract contained a provision, that Phillips was to pay all taxes on said land, and in case he should fail to comply with the terms of the contract, that Harrower should have the right to take possession of the premises.   On full compliance with the terms of the contract by Phillips, Harrower was to give him a deed.

The plaintiff paid to Harrower, on the contract, $100, March 10, 1864, and $476 by the sale of oak logs, March 10, 1865.

On the 15th April, 1865, the plaintiff contracted to sell the premises to Archibald Manley, for $500, by an instrument in writing, which referred to the contract with Harrower, dated

the 10th March, 1864, and contained a reserving clause in these words : "Excepting and reserving from such sale, all the ties and timber then (the date of the contract with Harrower) standing and being on said lot, suitable for railroad ties or for sawing purposes, with the right to enter upon said land at any time within six years from the 10th March, 1864, to cut and move said timber." Manley agreed to pay fifty dollars down, and seventy-five dollars, with interest, to be computed from 10th March, 1864, and payable on the 10th March in each year, all to be paid to Harrower, to be applied in payment of his contract ; and, when the $500 was fully paid, Harrower was directed to deed to Manley. The contract provided that Manley was "to have possession of the premises immediately, except so far as relates to said timber named, but in the occupation thereof he shall not injure or destroy said timber."

While the plaintiff held the contract, the land was wild and uncultivated ; but the plaintiff got timber from it, and, by his permission, a man named Hamlin, who was employed in hewing ties for the plaintiff, during the winter of 1865, occupied a house on the lot while he was so employed. There was no other actual occupation of the lot by any one before the plaintiff sold to Manley. In the fall of 1865, Manley assigned his contract to Wilson, who went into possession of the land under the contract, and lived there till the spring of 1867, when he assigned the contract to Mrs. De Groat, the wife of the defendant, and the defendant then went into possession. The evidence tended to show that while defendant was in possession, he cut down some of the timber reserved by the plaintiff, and converted it to his own use ; and also used and converted other reserved timber that had been previously cut down by Wilson, and was lying on the premises.

The plaintiff offered to prove that Harrower had notice of the contract with Manley, and agreed to take it as security, and permit the plaintiff to take off the timber as he pleased, without asking Harrower's consent ; also that Harrower had more than half the timber that was on the land when the

Phillips *v.* De Groat.

contract was made to Manley. Each offer was excluded, and plaintiff excepted.

It is suggested by the defendant's counsel, that the cause of action alleged in the complaint is what would have been called trover under the old system, and not trespass. I think, however, that although the complaint is perhaps somewhat inartificial, the cause of action which it sets out, is to be regarded by fair construction, as in trespass for entering upon the plaintiff's close, and wrongfully taking and conveying timber therefrom, the property of the plaintiff, and converting the same to the defendant's use. The complaint not only avers the wrongful taking and conversion of timber, which would be enough in trover, but it also describes the premises on which it was situate.

The pleader who drew the answer, evidently so understood the complaint, as he avers, by way of defence, that the timber was growing on the land of Harrower, to which the plaintiff had no title. And at the trial, the plaintiff was permitted, without objection, to give evidence tending to show, not only that the defendant had taken and used cut or fallen timber, but also, that he had cut down and removed *standing* trees, which the plaintiff claimed to have reserved.

We are, therefore, to inquire whether the plaintiff had any such title, or possession, as would enable him to maintain an action, either of trespass to real property, for the trees which the defendant severed from the soil, or of trespass to personal property, for those which having been previously severed by a third person, were wrongfully taken and appropriated by the defendant.

1st. As to trespass to the realty. The general rule is, that to maintain trespass *quare clausum*, there must have been an actual possession in the plaintiff when the trespass was committed, or a constructive possession, in respect to the right being actually vested in him. The ground of the action, is the injury to the possession (4 Kent, 120.) A general property, in the case of real estate, is not, as in the case of personal, sufficient to support trespass. Thus, it has

been held, that a lessor can not maintain trespass against a stranger, while there is a tenant in possession (*Campbell* v. *Arnold* 1 Johns., 511), though this rule has been held not to apply, if the tenant in possession was one at will merely (*Starr* v. *Jackson* 11 Mass., 519); but otherwise, provided the tenant was one holding from year to year. (*Catlin* v. *Hayden*, 1 Verm., 375.)

An actual *pedis possessio* is not necessary, in all cases. Thus, a constant and uninterrupted use of an unfenced lot, for twenty years, as a wood lot for the farm on which the plaintiff lived, has been held a sufficient actual possession to maintain the action. (*Machin* v. *Geortner*, 14 Wend., 239.)

If the premises are vacant, the right of action is in the party having the legal title. By this is meant such title as draws to it possession. Where the right of property and the right of possession, which are separate and necessary ingredients of a perfect title, are vested in different persons, the party having the right of possession may maintain trespass; and where a man has a separate interest in the soil for a particular use, although the right of the soil is not in him, if he be injured in the enjoyment of his particular use of the soil, he may maintain trespass *quare clausum*. In *Wilson* v. *Mackreth* (3 Burr, 1824) the plaintiff had an exclusive right to take the turf in a several parcel of ground, in which and in other parcels adjoining he and the other tenants of the manor had common of pasture, the right of the soil being in the lord of the manor. The defendant dug and carried away plots in the place in question, and it was held that the plaintiff might maintain trespass *quare clausum* against him. In *Clap* v. *Draper* (4 Mass., 266) it was held that a grant to one, his heirs and assigns, of all the trees and timber standing and growing in a close forever, with free liberty to cut and carry them away at pleasure, conveys an estate of inheritance in the trees and timber, and the grantee may maintain trespass *quare clausum* against the owner of the soil for cutting down the trees.

The contract from Harrower to the plaintiff, vested in the latter, an equitable title to the fee of the land, with a lawful

Phillips *v.* De Groat.

right to enter immediately into the possession of the premises and to cut the timber and prepare it for market, for the purpose of supplying himself with means to pay for the land. So long as he complied with the terms of the contract Harrower could not lawfully disturb his possession. Under the contract the plaintiff went into possession in fact, cut timber, marketed it, and paid the proceeds, or some part of them, to Harrower on the contract. While he was thus in the actual possession he could undoubtedly have maintained trespass against a naked wrong doer, and it seems equally clear that while the premises were vacant, after his purchase from Harrower, and before he sold to Manley his exclusive legal right to the possession, drew to it the constructive possession and the right to maintain trespass.

The effect of the reservation of the trees and timber in his sale to Manley was to continue in him the same rights as were theretofore possessed by him in respect to the trees and timber thus reserved and the soil on which they stood. The reserved trees and the soil on which they were growing, thereby became a separate close, of which he retained the exclusive legal right of possession so long as he performed his contract with Harrower.

If, in a lease for years, there be a reservation of the trees, the lessor may maintain trespass against any person who cuts them down or injures them, for by the reservation of the trees the land in which they grew was reserved also, and the lessor in possession of it in fact at the time of the trespass (8 East., 190; 1 Arch. N. P., 411). (See also 6 East. 602; Selw. N. P., 1287; *Clap* v. *Draper, sup.*) The possession of the lot which Manley derived from the plaintiff was co-extensive with his purchase only, and did not extend to the trees, which the plaintiff reserved to himself.

If the foregoing considerations are correct, it follows that the plaintiff, having an interest in the reserved trees, coupled with an exclusive right of possession, could maintain trespass against the defendant, in respect to those which he wrongfully removed from the soil

As to the reserved timber previously cut down by Wilson, and carried away by the defendant, the plaintiff, for the pur poses of this action, may be regarded as having a special property therein, with the immediate right of possession. We have seen that under the contract with Harrower, the plaintiff had a right to cut down the timber, and fit it for market. He had an interest in doing so, as a means of pay ing for the land. By the terms of the contract, he could not, however, remove the timber from the lot without Harrower's consent, and Harrower could insist that the avails of at least one half of it should be applied upon the contract. Whether the effect of these latter provisions was to retain in Harrower the general title to the timber until it was marketed, or whether they merely created a security in his favor for the payment of the purchase money, is immaterial for the pur poses of this action. If the general property was in Harrower, the plaintiff had an interest in the timber, coupled with the right to reduce it to his possession when he pleased, and he could therefore maintain trespass against a wrong doer. If the conditions referred to were in the nature of a security to Harrower, he could release or waive them, and the plaintiff offered to show that he had done so. In either view the plain tiff's right to maintain trespass, *de bonis asportatis*, is perfect.

In the view I have taken of the case, the question whether the defendant, as the vendee of the plaintiff, is estopped from disputing the title of the latter, does not arise. I infer, how ever, from the course of the argument submitted to us, that the counsel on both sides presented that question at the circuit as a vital point in the case. If it were necessary to pass upon it, I should concur in the disposition made of it at the circuit, for the reason that as the trees did not pass by the contract, under which the defendant claims title, no estoppel can arise as to them.

But upon the ground above stated, I think the nonsuit should be set aside, and a new trial ordered, with costs to abide event.

Ordered accordingly.