## CULVER vs. AVERY.

An action on the case lies against *a public officer* for a *false* and *fraudulent representation* made by him in relation to property sold by him; and it is no answer that the sale was made in his official character.

The action lies for such representation made during a treaty for the sale and purchase of lands, if damage ensues, although the negotiation has been consumated by a deed or written contract.

Whatever is said or done in *good faith* in a treaty for a sale and purchase, is merged in the purchase itself when consumated, and cannot be overhauled, whether the representation were true or false; but if they were *known to be false* when made, and have produced damage to the opposite party, the subsequent consumation of the agreement will not shield the defendant.

Where a party was induced by a false representation to purchase property at a *loan officer's* sale, paid the purchase money and obtained a deed which conferred no title, the property having been previously sold under a prior incumbrance, *it was held*, that an action on the case might be maintained by the purchaser, without proof that a suit had been brought for the recovery of the premises.

Case lies for a false representation, whether made on the sale of *real* or *personal* property; and whether it relates to the *title* of land or to some collateral thing attached to it.

A verdict will not be set aside in an action on the case for a false representation, as against evidence, unless it be clearly and manifestly so.

THIS was an action *on the case*, tried at the Cayuga circuit, in January, 1830, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The plaintiff in his declaration alleged that on the 19th September, 1826, the defendant and one William Satterlee, being *commissioners of loans* for the county of Cayuga, sold to the plaintiff certain premises, by virtue of a *mortgage* which they held, as such commissioners, executed by one Samuel Seward; that the plaintiff bid in the premises for the sum of $80, paid the money, and received the deed of the commissioners; that at the time of the sale the defendant, in order *deceitfully* and *fraudulently* to induce the plaintiff to purchase the premises, *falsely* and *fraudulently represented* and affirmed that the premises were *clear of any other incumbrance*, and that the purchaser under the mortgage at such sale would *acquire a perfect title* to the premises, and that *giving faith* to such representation, the plaintiff made the purchase. The plaintiff then averred that long before the date of the mortgage of Seward, to wit, in May, 1816, the defendant had obtained a judgment against Seward, in the Cayuga common pleas, for a certain sum; that in 1819, a *fi. fa.* had been issued on such judgment, by virtue of which the mortgaged premises were sold on the 13th of May, 1819, to certain persons who were named, and a deed executed to them by the sheriff; that the defendant, at the time of the representation made by him, well knew the existence of the judgment, the execution issued thereon, and the sale under it. By means whereof the plaintiff acquired *no title* under the purchase made by him, lost gains and profits, and was put to charges and expenses; and so the plaintiff said the defendant *falsely and fraudulently deceived him*, by reason whereof he had sustained great damage. There were two other counts, substantially like the first. The defendant pleaded the general issue.

The mortgage executed by Seward bore date 1st May, 1817. The plaintiff proved that in May, 1816, a judgment was entered in favor of the defendant against Seward, for $220 debt, and $10 costs; that an execution was issued on such judgment, upon which the sheriff was directed to levy $24,28 and interest, and that on the 13th May, 1819, the mortgaged

premises were sold by virtue of such execution, and a deed executed by the sheriff to the purchasers. He further proved by one witness, that at the time of the sale under the mortgage, the defendant, in answer to an inquiry of the plaintiff, as to the title, said, *he presumed it was good*, and by another, that on the judgment in favor of the ·defendant being mentioned, the defendant said that he had got his pay, that E. Burnham had transacted the business in relation to it, and that Burnham had told him that the judgment would be no incumbrance upon the title, and that he, the defendant, presumed it would not; whereupon the plaintiff bid $80 for the property, it was struck off to him, he paid the money and received a deed from the commissioners. It was further proved that previous to the sale under the mortgage, the defendant had direct notice of the sale under the judgment in his favor, and that after investigation of the facts, he declared his determination to proceed and sell under the mortgage. The plaintiff rested. The defendant moved for a nonsuit, which was denied. On the part of the defendant it was shewn that on the 19th October, 1816, the defendant assigned the judgment in his favor against Seward to Burnham, his attorney, and had no communication with Burnham on the subject from that time until 1826, when he called upon him for information respecting it, and was then induced by Burnham to believe that if there had been a sale under the execution on the judgment in his favor, that the purchase had been made for the benefit of Seward; Burnham saying that if the property was offered for sale under the mortgage, he would not be afraid to purchase it in. It further appeared that at the time when the loan was obtained and the mortgage executed to the commissioners, Seward made an affidavit that there were no incumbrances on the premises proposed to be mortgaged, and that a certificate from the clerk of the county was produced to the commissioners that the premises were free from incumbrances.

The evidence being closed, the defendant's counsel insisted that the plaintiff had not sustained his action; that the defendant having acted as a public officer in the sale of the premises, an action would not lie against him for any fraud or deceit committed by him upon that occasion, and that to entitle the

plaintiff to recover, he ought to have shewn either an eviction of an unsuccessful ejectment suit for the recovery of the premises. The judge charged the jury that if the defendant had been guilty of the fraud alleged against him, the fact of his acting at the time as a public officer would not protect him; and that the action lay, although the plaintiff had not shewn either an unsuccessful attempt to recover the premises, or an eviction, and submitted the question of fraud to the jury, who found a verdict in favor of the *plaintiff* for $75, which the defendant moved to set aside.

*W. H. Seward*, for the defendant. The action for a *deceit* does not lie in this case; if there was a failure of title, the remedy of the plaintiff should have been upon his *deed*. In *Leonard* v. *Pitney*, 5 Wendell, 30, Mr. Justice *Marcy* observed that " doubts may well be entertained whether an action at law will lie for a deceitful and false representation of title in the vendor of real estate. Such an action has not as yet, I believe, been sustained, except it may be in some of the states, where the same tribunal is possessed of equity jurisdiction, as well as the powers of a court of common law." The case was decided upon another point, but the learned judge was well warranted in the principle advanced; for dangerous indeed would be the doctrine, if a purchaser, instead of seeking his remedy under the covenants in his deed, were permitted to bring his action for *deceit*, and support it by the confused and indistinct recollection of witnesses, of what was said during a negotiation for a purchase. Besides here the action was against a public officer, the agent of the government, who could have no possible motive to commit a fraud. The situation of a public officer executing such trusts is sufficiently onerous without exposing him to private suits; indeed it is a fundamental principle of public policy that he should be protected against them. If he acts corruptly, he should be prosecuted by indictment, and punished by removal from office. But if the action was sustainable, the plaintiff here should have been nonsuited, the proof being wholly insufficient to support the allegations in the declaration; or if it amounted to any thing, it was *variant* from the allegations, which charg-

UTICA,
July, 1831.

Culver
v.
Avery.

ed a fraudulent *representation*, whereas the proof, at most, shewed a mere *concealment*.   1 Johns. R. 96, and 129.

*F. G. Jewett*, for the plaintiff.   The plaintiff having proved the representation made by the defendant to have been *false*, and that he *knew* it to be so, was entitled to maintain the action.   1 Comyn's Dig. 272.   6 Johns. R. 182.   13 id. 395. 9 Barn. & Cress. 928.   Although the defendant at the time of the representation was in the discharge of an official duty, he is not excused on that account, as his public duties did not require him to commit a fraud, and having committed one, he is liable, as a private person.   20 Johns. R. 739.   2 id. 286. 3 Wilson, 461.   12 Mass. R. 466.   6 Taunton, 29.   4 T. R. 794.   Fraud being a question of fact, and having been fairly submitted to the jury, the court will not, in a case like this, where there was evidence in support of the action, set aside the verdict.   3 Johns. R. 180.   9 id. 36.   15 id. 493.   8 id. 369.

*By the Court*, SUTHERLAND, J.   The finding of the jury disposes of the question of fraud.   They have pronounced the defendant guilty of the false and fraudulent representations alleged in the declaration, and that they were made with the fraudulent intent to deceive and injure the plaintiff.   A verdict must be most clearly and manifestly against evidence to justify the court, in an action like this, in setting it aside. This is not a case of that description ; whatever may be the opinion of the court upon the strict weight of evidence, as it appears on the case, the jury, whose province it was to weigh and pass upon it, and who saw and heard the witnesses, have thought the preponderance against the defendant.   I should have been inclined to a different conclusion ; but the jury not only had the right, but were more competent, fairly and discreetly to decide the question than we are.   Their decision cannot be disturbed.   3 Johns. R. 180.   8 id. 369.   9 id. 36. 15 id. 493.

The only question, then, is whether the action is sustainable.   It appears to me to rest upon the soundest and best established principles.   *Fraud* or *deceit*, with *damage*, gives a

good cause of action. In the celebrated case of *Pasley* v. *Free-man*, 3 T. R. 56, it was held that a false affirmation, made by the defendant with intent to defraud the plaintiff, whereby he sustains damage, was the ground of an action upon the case, in the nature of deceit ; and that it was not necessary, in order to sustain the action, that the defendant should be benefitted by the deceit, or that he should collude with the person who was benefitted. The opinions of Lord *Kenyon*, of *Buller*, and *Ashurst*, justices, place this doctrine, in my judgment, upon unanswerable grounds, and they have been sustained by the most learned and eminent of their successors. 1 East, 318. 2 id. 92. 3 Bos. & Pull. 367. 5 id. 241. 1 Campb. 4, 277.

*Pasley* v. *Freeman* was the case of a false representation in relation to the responsibility and credit of a third person, by which the plaintiff was induced to sell to him a large amount of goods. This case was expressly recognized and followed by this court in *Upton* v. *Vail*, 6 Johns. R. 181, and *Barney* v. *Dewey*, 13 id. 224. *Upton* v. *Vail*, was also a false represen-tation of the responsibility of a third person. Kent, Ch. J. ex-presses his entire approbation of the reasoning and decision of the judges in *Pasley* v. *Freeman*. He considers it not a new doctrine, but merely the application of a principle of natural justice long recognized in the law, that fraud or deceit, accom-panied with damage, is a good cause of action. He considers it a principle of universal law, independently of all adjudged cases, and places his opinion upon that broad foundation. Ch. J. *Spencer*, in *Barney* v. *Dewey*, reiterates the doctrine. See also *Wise* v. *Wilcox*, 1 Day's Cas. in Err. 22. These cases, it is true, were representations relating to the sale of *personal* chattels ; but it is not perceived how the nature or description of the subject of the false representation can affect the princi-ple. In *Monell & Weller* v. *Colden*, 13 Johns. R. 395, it was applied to representations made upon the sale of *real* estate. The defendant in that case owned a lot of land in the village of Newburgh, bounded on the east by high water mark on the bank of the river. The plaintiffs were in treaty for the pur-chase of it, and the defendant, in order to induce them to pur-chase and give an enhanced price, falsely represented to them, that if they became the purchasers, they would, by virtue

VOL. VII. 49

thereof be entitled to make an application to the commission-
ers of the land office for the land under the water of the river,
adjacent to the lot, agreeably to the laws of the state ; and
the declaration averred that giving faith to such affirmation,
and not knowing to the contrary, the plaintiffs were induced
to purchase and pay a large sum of money. The defendant
demurred to the declaration, and it was held by the whole
court that the action was well brought. Ch. J. *Thompson*
delivered the opinion of the court, and after recapitulating the
facts, he observed that he could not see why they did not
show a good cause of action. They show a most palpable
fraud, practised on the plaintiffs in the sale of land, by which
fraud they have been essentially and materially injured. The
defendant knowingly and falsely misrepresented the fact with
respect to the situation of the land under the water, and he is
chargeable with all the damages resulting from such false
representation. That a deed·has been given, cannot affect
the plaintiff's claim for the fraud ; the false representation was
not respecting any thing to be included in the deed, but with
respect to a privilege appurtenant to the land.

Can the circumstance of the false representation relating to
the *title* of the land conveyed, instead of some collateral thing
attached to it, vary the principle ? If it does, it can only be
upon the ground that the whole agreement of the parties is, in
judgment of law, merged and incorporated in the deed or writ-
ten contract. This is undoubtedly true, so far as the transac-
tion rests in contract ; but it has nothing to do with the false
and fraudulent representations of the parties. Whatever is
said or done in *good faith*, in a treaty for a sale and purchase,
is merged in the purchase itself when consumated, and you
·cannot overhaul it, whether the representations were true or
false ; but if they were *known to be false* when made, and
have produced damage to the opposite party, the subsequent
·consumation of the agreement cannot shield the defendant.
The case of *Early* v. *Garret & Lankester*, 9 Barn. & Cresw.
928, sustains this distinction. The defendants, as assignees
in bankruptcy of one Covard, sold to the plaintiff a piece of
land belonging to the estate ; the plaintiff before the contract
·was consumated, enquired of the defendants whether it was

subject to rent, or any rent had ever been paid on it, and they replied that no rent had ever been paid, either by the bankrupt or any person under whom he claimed. This turned out not to be true, and the plaintiff was finally ejected for the non-payment of the rent. He then brought an action for money had and received, to recover back the consideration money, on the ground that the defendant's representation was false and fraudulent, and rendered the purchase void. The judge who tried the cause charged the jury that the plaintiff was entitled to recover, if the defendants *knew* that rent had been paid and fraudulently suppressed the fact otherwise not. The jury found for the defendants. Upon a motion for a new trial, *Bayley*, J. said, if a seller fraudulently conceal that which he ought to communicate, it will render the contract null and void. I make no distinction between an active and a passive communication, but the authorities establish, that the concealment must be *fraudulent*. The jury have found here that there was no fraudulent concealment. *Parke*, J. said the decisions show that the purchaser cannot recover, unless he prove fraud on the part of the seller. Here the plaintiff paid his money for the land, to be taken with all faults. That being so, I think the learned judge properly stated to the jury that mere non-communication was not sufficient to avoid the contract, but that it must be *fraudulent*. The question in substance left to the jury was, whether the concealment was fraudulent; they have found that there was no fraudulent concealment. If the circumstances of that case had been such as to entitle the plaintiff to recover back the consideration money, an action for the deceit or fraud would undoubtedly have been maintained. In *Schneider* v. *Heath*, 3 Campb. 505, a ship had been sold by the defendant to the plaintiff, *to be taken with all faults ;* and it was held that notwithstanding that provision, if the defendant *knew of secret defects in her, and used means to prevent the purchaser from discovering them, or made a fraudulent representation of her condition* at the time of the sale, he would be responsible, and the contract would be avoided, and the consideration money could be recovered back. In *Baglehite* v. *Walters*, 3 Campb. 153, Lord Ellenborough held the same doctrine. *Pickering & others* v. *Dowson and others,*

UTICA,
July, 1831.

Jackson
v.
Browner.

4 Taunt. 779, was an action upon the case, for a deceit in the sale of a ship; and the same rule was adopted as in the preceding cases : that if the *vendor made use of any fraud or practices to conceal faults,* he was responsible. These authorities appear to me fully to sustain this action.

The official character of the defendant in making the sale cannot protect him. The representations made by him had nothing to do with his official character. He then spoke as an individual, and the misrepresentation was in relation to a fact known by him, in his private capacity alone, and which had no connection with his office as commissioner of loans.

It was not necessary to prove that a suit had been commenced by the plaintiff, to recover the possession of the premises; it was proved that the judgment on which the land was sold was older than the mortgage, and that it had been regularly sold and conveyed by the sheriff. The plaintiff of course acquired no title under the mortgage. The doctrine in relation to breach of warranty does not apply to a case of fraud.

Motion for new trial denied.