ALBANY,
October, 1835.

Machin
v.
Geortner.

</div>

Judgment reversed.

---

## MACHIN *vs.* GEORTNER.

In *trespass quare clausum fregit*, the defendant may, in *mitigation of damages*, prove that the trespass was not wilful and malicious; and in this case, *it was held* that he might show that he entered to survey off a certain portion of the premises sold for quit rents.

Proof that the premises were used as a wood lot, for the purposes of fuel and fencing, is sufficient evidence of *actual possession* to sustain an action for trespass.

ERROR from the Montgomery common pleas. Geortner sued Machin in a justice's court, and declared against him in *trespass quare clausum fregit* for entering upon his premises, and cutting, damaging and destroying timber and bushes, standing and growing thereon. The defendant pleaded the

general issue, and gave notice that he would prove that he entered as a surveyor, to ascertain the boundaries of land sold for non-payment of quit-rent. The cause was tried by a jury, who found a verdict for the plaintiff for $45 damages; on which the justice rendered judgment. The defendant appealed to the Montgomery common pleas; and on the trial in that court, the plaintiff proved that the land on which the defendant entered had been used as a wood lot to the farm on which the plaintiff resided for about 20 years, where he and his father, under whom he claimed, had during all that time cut their fire wood and rail timber, and had also cut saw logs, and made maple sugar thereon. It appeared that the lot was not fenced, nor was there any clearing upon it, but it was the only wood lot which the plaintiff had. He proved that the defendant, with several other persons, entered upon this lot, and measured off about 16 acres of his best timber land, and marked a line through his woods, marking and cutting about 20 trees, which were worth from $5 to $10 a piece. The defendant said he intended to take 16 acres of the plaintiff's wood lot for quit rent. Several witnesses testified that the line run by the defendant was nigh several disputed lines, that the trees marked would all have to be cut away to avoid future difficulty, and that cutting them down would open the woods, so that much other timber would be destroyed; they estimated the plaintiff's damages at a sum exceeding $50. The plaintiff rested. The defendant moved for a nonsuit, on the ground that the plaintiff had failed to prove himself in the *actual possession of the locus in quo.* The court refused the nonsuit. The defendant then offered in evidence a deed from *The People* to Jesse Buel, for the land in question, and a power of attorney from Buel to the defendant to enter thereon. The plaintiff objected, that under the plea of the general issue, the defendant could not show title, and the court excluded the evidence. The defendant then offered the same evidence in *mitigation of damages.* The plaintiff objected, and the court sustained the objection. The jury, under the charge of the court, found a verdict for the plaintiff, with $60 damages. The defendant having except-

ed to the decisions of the court, and procured a bill of ex-
ceptions to be sealed, sued out a writ of error.

*D. Eacker & C. McVean,* for plaintiff in error.

*D. F. Sacia,* for defendant in error.

*By the Court,* SUTHERLAND, J. The plaintiff in error contends that the plaintiff below failed, 1. To show himself in the *actual possession* of the *locus in quo ;* and as he exhibited no paper title, he was not entitled to recover; and 2. That the court erred in rejecting the evidence which he offered in *mitigation of damages.*

The evidence was abundantly sufficient to establish the plaintiff's actual possession of the premises in question. It was shown that the lot on which the trespass was committed, had been used as the wood lot to the farm on which the plaintiff lived, for about 20 years ; that during all that time, the plaintiff, and his father under whom he claimed title, had cut their fire wood, saw logs and rail timber on the lot, and had also made maple sugar thereon, and had a house thereon for that purpose ; that it was the only wood lot the plaintiff had, and had been used as such for 20 years ; that it was not fenced, nor was there any clearing upon it. The precise dimensions or contents of the lot are not given ; but it is fairly to be inferred, from the evidence, that it was not larger than was required for the purposes of fuel, fencing, &c. for the farm to which it was attached. The plaintiff had all the possession which can be had of a wood lot, reserved and used exclusively for fuel, fencing, &c. A constant and uninterrupted use for those purposes, is undoubtedly sufficient to constitute an actual possession, and to enable the plaintiff to maintain trespass for any encroachment upon it.

The trespass in this case consisted in an entry upon the wood lot, by the defendant as a surveyor, with several other persons as his assistants, and measuring off about 16 acres of it, alleged to have been sold to Jesse Buel for quit rent. The defendant offered in evidence a deed from *The People* to Buel

for the land in question, and a power of attorney from Buel to him to enter upon the same. This evidence was rejected, on the ground that the defendant had not pleaded title in the court below, and could not therefore avail himself of it in the court of common pleas. The defendant then offered the same evidence in mitigation of damages, which was also rejected. The court were undoubtedly right in excluding the evidence of title, by way of justification—this precise point was adjudged in *Dewey* v. *Bordwell*, 9 *Wend.* 65 ; but I am inclined to think the evidence was admissible in mitigation of damages, and should have been received for that purpose. It tended to show that the trespass was not wilful and malicious ; that the defendant entered under an honest though mistaken belief that his entry was lawful. His notice, accompanying the general issue, before the justice, apprised the plaintiff that he would prove that he entered as a surveyor, to ascertain the boundaries of land sold for quit rent. The evidence therefore did not take the plaintiff by surprise, and it was calculated to have a decided effect with the jury upon the question of damages. It is true, that several witnesses are said to have sworn that the plaintiff's damages were over $50, but the reasons assigned for that opinion strike me as very unsatisfactory at least, if not absurd. I think, therefore, the judgment should be reversed, and a *venire de novo* issued by the Montgomery common pleas ; costs to abide the event.