## SUPREME COURT.

### CRANDALL agt. BRYAN.

On an application for an order of *arrest*, the affidavits to be presented to the judge must make out a *prima facie* case for the arrest. That is, the judge must be satisfied judicially, upon the force and weight of the evidence produced by the affidavits, that a cause of action exists, and that the case is a proper one for an arrest within the provisions of the Code.

An affidavit for an arrest upon information and belief generally, is clearly insufficient. But some of the material facts may be stated upon information and belief, where the affidavits state the nature, quality and means of the information, so that the judge can be able to see that this belief is well founded, as was held in *Whitbeck* agt. *Roth* (5 *How. P. R.* 143.)

Deceit, or fraudulent representations accompanied by damage, constitute a good ground of action in respect to a sale of *real*, as well as personal property.

The Code did not, nor could not abolish the common law, or common law rights. And it is to be regretted that the codifiers should have thought it necessary to abolish the *names of remedies* which were so well defined and understood as to have become almost inseparable from the right of action, and attempted to introduce an entire new nomenclature into the law.

This change frequently leads to doubts and perplexities in cases arising under the provisions of the Code itself. For instance, formerly, in respect to many rights of action, there was an election whether the form of the remedy should be *assumpsit* or *case;* and where in cases of *fraud* the remedy would have or might have been assumpsit, an arrest now can clearly be made, for that is an action where "the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation for which the action is brought," &c. (§ 179, *sub.* 4). But it is not so clear whether the defendant can now be arrested under this subdivision, when the form of the remedy in respect to the fraud would have been under the old system an *action on the case;* as for instance, fraud or deceit in the sale of land.

Whether a defendant can now be arrested in an action for fraud or deceit in the sale of land, must depend upon the construction to be given to the word "*obligation*" in sub. 4, § 179 of the Code, where it says "or incurring the obligation for which the action is brought," &c.

*Held,* that this clause "incurring the obligation for which the action is brought," was intended to cover cases of fraud in fact, where the remedy was not on the contract in form; where the fraud was committed in some matter of contract under or by virtue of which the plaintiff suing had been deprived of his property. And the word "obligation" therein is used in the general sense to include all the cases beyond those which would be embraced in the first clause,

Crandall agt. Bryan.

where the fraud is committed " in contracting the debt for which the action is brought;" where the action would not rest upon the contract, but upon the legal duty. It must be construed, in this connection, as equivalent to *legal liability* or *legal duty*.

*Seventh District, at Chambers, June,* 1857.

MOTION to discharge defendant from arrest.

This action was brought by Jesse Crandall against James Bryan. The complaint stated that the plaintiff and defendant agreed to exchange lands, the plaintiff contracting to give a farm in Union, Monroe county, for lands in Barry county, Michigan, which defendant claimed to own; that deeds were duly exchanged, the defendant representing that he had a good title to the Michigan lands, and that they were free from all incumbrances, although there was a squatter on them who had and claimed no title, and would give up possession at once on being paid a small sum for his crops; that plaintiff had ascertained from official certificates and other information that defendant did not own, and had never owned the lands in Michigan, but they were actually occupied by one Sacket, who claimed to own them, and who had a good title upon record. The complaint further stated that the defendant had conveyed the lands in Union, and that the same had by several mesne conveyances, duly recorded, come to the possession of a *bona fide* purchaser, and were, therefore, lost to or could not be recovered by the plaintiff. He claimed to recover in damages the estimated value of the lands in Union or Michigan, with other damages.

Annexed to the complaint were several affidavits tending to show fraud on the part of the defendant, and also an affidavit by one Hall, who was the agent of plaintiff in making the trade, and who swore positively to the representations of the defendant in respect to the Michigan lands, his title, and their situation, as stated in the complaint. He also swore that he had been to Michigan to take possession of the land for the plaintiff, and found the same in the actual occupation of the person named in the complaint, who claimed title thereto absolutely, and that he then and there ascertained from an ex-

amination of the records of the office of the register of Barry
county, and from the official certificates of said register, and
from the owner and occupant of the said Michigan lands, one
Henry Sacket, and from other sources, and which he believed
to be true, that no part of the said land so pretended to be
conveyed by said defendant to the said plaintiff was, on De-
cember 4, 1855 (which was the date of defendant's deed), or
at any other time, owned by said defendant, nor did the said
defendant then, or ever, have any title whatever thereto, or
any part thereof, but, on the contrary, that said land was then,
and had been, for four years or thereabouts, the last past,
owned and occupied by one Henry Sacket, and Laura A.
Sacket, his wife, or one of them, by a good, valid, and suffi-
cient title, and that said land was then incumbered by good
and valid mortgages thereupon, which are valid and subsist-
ing liens thereon, amounting in all to the sum of $375 ; that
said land was not occupied by a squatter, but by owners,
under the title and claim aforesaid, who claimed that their
interest in it, and its value, was $2,000 or thereabouts.

On the complaint and affidavits an order of arrest was
granted in the sum of $3,000.

The defendant now moved, on the same papers, to discharge
the order.

G. F. DANFORTH, *for the motion.*
O. H. PALMER, *opposed.*


E. DARWIN SMITH, Justice. If I am entitled to believe
the complaint in this action, and the affidavits annexed thereto,
on which the order of arrest was made, the defendant has ob-
tained the title to the plaintiff's farm, and deprived him thereof
without any consideration, by *fraud* and *false pretences.*
Fraudulent representations, or deceit accompanied by damage,
constitute a good ground of action in respect to a sale of lands,
as much as in respect to personal property. Before the Code,
an action on the case for the fraud or deceit would clearly
have been sustainable upon the facts set up in the complaint

Crandall agt. Bryan.

and affidavits in this case. (*Whitney* agt. *Allair*, 1 *Comst.* 308; 13 *Johns.* 325; *Id.* 402; 7 *Wend.* 386; 17 *Id.* 193.)

Two points are made upon the papers on this motion, assuming that a good cause of action is stated in the complaint:

1. That the order of arrest should be discharged, because the complaint and affidavits do not make out by competent proof, or legal evidence, the fact of the fraud.

2. That the Code does not authorize an arrest in such a case, if the fraud be sufficiently established.

Section 181 of the Code provides that the order may be made when it shall appear to the judge, by affidavits of the plaintiff or any other person, that a sufficient cause of action exists, and that the case is one of those mentioned in section 179.

The affidavits to be presented to the judge must make out a *prima facie* case for the arrest. It is said in some cases, that they must be positive as respect the cause of action and the ground on which the arrest is sought. (1 *C. R.* 41; 3 *How. Pr. R.* 265; *Id.* 219.) But this rule is to be construed and applied in a rational manner, and with some degree of qualification in respect to the particular facts and circumstances of each case. The judge is to be satisfied from the affidavits that a cause of action exists, and that the case is a proper one for an arrest within the Code. The statute does not define the proof to be made, except that it be by affidavit; nor does it define or fix the degree of, or extent of the evidence; how near it must come to legal evidence—such as would be required on the trial of the issues; or how much short, if any, it may come of such evidence. Something, doubtless, is left to the judgment and discretion of the judge, in respect to the particular facts of each case, and such was the obvious intention of the legislature. But the judge is not at liberty to exercise anything but a sound judicial judgment upon the force and weight of the evidence produced. He must, as Judge SAVAGE said, in *Smith* agt. *Luce* (14 *Wend.* 239), " be satisfied *judicially*."

An affidavit upon information and belief generally, is clearly insufficient; but I agree with Judge EDMONDS, in *Whitbeck* agt. *Roth* (5 *How. Pr. R.* 143), that some of the ma-

terial facts may be stated upon information and belief, where the affidavit states the nature and quality and means of the information, so that the judge can be able to see that this belief is well founded; otherwise there obviously could be no arrest in many fit cases, owing to the difficulty of procuring, within the requisite time for the application, as full proof as would be necessary for a final recovery.

In this case, the witness Hall, who proves the essential facts of the fraud, went to Michigan to take possession of the land for the plaintiff, and swears positively that he found one Sacket in possession of the land, occupying it as owner, and claiming to be the owner thereof, and asserting that he had the legal title to it. So far as relates to the occupation and claim of title, this is positive. He also swears positively that he ascertained then and there, by examination of the records of the office of the register of the county of Barry, and from the examination of the official certificates of said register, and from the owner and occupant of said land, naming him, and other sources which he believed, that the defendant did not own, and never had owned, the land in question, but the same belonged to said Sacket at the date of the defendant's deed to the plaintiff, and had for four years.

The witness swears in substance and to the effect that he found such to be the facts on examination at the register's office, and from the official certificates of the register. This is not as certain as the affidavit of the register and the affidavit of the occupant, Sacket, would make it. On the trial this witness cannot, from this examination and information, prove the facts to be established in respect to the defendant's want of title.

But on this motion, and for the purpose of the arrest of the defendant, I think it is sufficient. It is something more than mere information—it is personal examination of the records— personal examination of the official certificates of the registry, and information from the person in actual possession of the land. The judge can see from this statement that the witness applied at the proper quarter or source to learn the facts, and

that, if he speaks the truth, he was entitled to believe what he states; that the defendant had no title to the land in question. The plaintiff makes as positive proof of the facts to authorize the arrest as he could make in this state, or could make without obtaining the affidavits of the register and of Sacket from Michigan. I do not think he was bound to do so for the purpose of this arrest.

The plaintiff also states in his complaint, that from information derived from the records of the office of the register of Barry county, and from the official certificates of said register, and from other sources, and upon his belief, no part of said land in Michigan belonged to the defendant at the date of his deed thereof. This allegation in the complaint implies that the plaintiff himself also has examined the records, or, certainly, the official certificates of the register in respect to the title of the defendant. The source of his information, too, is thus stated. Taken with the more positive affidavit of Hall, I think the plaintiff makes out a *prima facie* case of fraud for the purpose of the arrest of the defendant.

The remaining question is, whether the Code authorizes an arrest upon the case thus made.

Section 179 of the Code makes five classes of cases of arrest. The order of arrest in this case, if sustainable, must come under subdivision 4 of the section or class, which is as follows: " When the defendant has been guilty of a *fraud* in *contracting the debt* or *incurring the obligation* for which the action is brought, or in concealing or disposing of the property for the taking or detention of which the action is brought." The present action is not one of *debt* or of *contract*, strictly speaking, and the right of arrest cannot be sustained upon the first clause of this subdivision or class of the section. The action is one for *fraud* or *deceit*. It is strictly such an action as would have been called, before the Code, " an action on the case." It is much to be regretted that while the codifiers did not, as they could not, abolish the common law or common law rights, they should have abolished the names of remedies which were so well defined and well understood as to have

become almost inseparable from the right of action, and attempted to introduce an entire new nomenclature into the law. It will be many years before the new terms or phraseology which they have introduced will have become defined by the courts so as to possess those elements of stability which should belong to legal language, if it cannot exist in respect to the law itself.

In abolishing imprisonment for debt, in 1831, it was primarily intended to except fraudulent debtors; to exempt from imprisonment in all cases of debt, except where the debt was fraudulently contracted, and except in certain specified cases where debts had been contracted in or grew out of some fiduciary relation, and promises to marry. The act of 1831 provided for the arrest of fraudulent debtors upon the warrant of a judge, and prescribed the proceedings consequent thereupon before the officer. The Code provides for a preliminary arrest in actions, now, for *fraud* in the same manner as in actions of slander or assault and battery. This was the obvious purpose in subdivision 4, above recited.

Formerly, in respect to many rights of action, there was an election whether the form of the remedy should be assumpsit or case. Where in cases of *fraud* the remedy would have or might have been *assumpsit*, an arrest now can clearly be made, for this is an action where the defendant has been "guilty of a fraud in contracting the debt," &c. But when the form of the remedy, in respect to a fraud, would have been *case*, under the old system, can the defendant now be arrested under the clause aforesaid? The answer to this question depends upon the proper construction of the word *obligation*.

The defendant, I assume, has been guilty of a *fraud*, and that fraud is the basis of this action.

Was he guilty of such fraud in incurring the obligation for which this action was brought? If the word "obligation" means a bond, or sealed instrument, or obligation in writing, as that word was commonly used before the Code, clearly the defendant cannot be arrested, for the action is on no such obligation. The word, I think, cannot have been used in any

such sense, for that would make this clause of the subdivision entirely superfluous. The previous clause will embrace all cases of fraud "in contracting a debt," whether it was contracted by a bond, or sealed, or an unsealed instrument, or by parol. The word *obligation*, in this connection, we are bound to consider and construe as meaning to include a class of cases not embraced in the previous clause. In most cases of fraud in contracts, the party injured may affirm or disaffirm the contract for the fraud. When he disaffirms the contract, and seeks to recover the property obtained by the fraudulent contract, the action is not brought in form upon the contract, and the defendant in such a case cannot be said to be "guilty of a fraud in contracting the debt for which the action is brought." If the party injured by a fraud cannot rescind the contract and sue for his property immediately—when the property cannot be reclaimed, and hold a defendant to bail—under this clause, "that defendant has been guilty of a fraud in incurring the obligation for which the action is brought,"—a distinction without any reason exists between this case and the one in which the action is in form upon the contract.

I cannot believe the legislature intended any such distinction. They intended to give the right of arrest in cases of *fraud* in getting or obtaining property, or contracting a debt by which a party was injured. It was intended to give the arrest against the person who committed the fraud. Such person is a fraudulent debtor within the intent of the act, in whatever shape the party injured seeks his redress by action. I think the "incurring the obligation for which the action is brought," was intended to cover just such cases—cases of fraud in fact, where the remedy was not on the contract in form ; where the fraud was committed in some matter of contract under or by virtue of which the plaintiff suing had been deprived of his property.

The word *obligation*, I think, should in this place and connection be construed as equivalent to the words *legal liability* or *legal duty*. Bouvier says : " Obligation, in its general and most extensive sense, is synonymous with *duty*. In a more

technical sense, it is a tie which binds us to pay or to do something agreeably to the laws and customs of the country in which the obligation is made." Webster defines *obligation* to be "the binding power of a vow, promise, contract or law, civil, political or moral, independent of a promise; that which constitutes *legal* or *moral duty*, and which renders a person liable to coercion and punishment for neglecting it." The word obligation, I think, in this subdivision, is used in this general sense, to include all the cases beyond those which would be embraced in the first clause, where the fraud is committed in "contracting the debt for which the action is brought;" where the action would not rest upon the *contract*, but would rest upon the *legal duty;* where the law casts a *liability* upon a man guilty of fraud, for which an action will lie. Wherever fraud and damage give a right of action, the law casts a *liability* and creates an *obligation*. In a suit brought to enforce such liability, it may truly be said, using the word *obligation* in the general sense mentioned by Bouvier and defined by Webster, that the defendant has been guilty of a fraud "in incurring the obligation for which the action is brought." In this case the right of action is clear. It is a gross case of fraud. The duty of the defendant to respond in damages is an *obligation*, a *duty*, a *liability*, imposed by the law. And I think, clearly within the intent and meaning of the statute, it is an obligation in respect to which the plaintiff has the right to arrest the defendant in the commencement of the action, that he may be held to answer for such damages as may be recovered.

The use of the word "incurring" favors this construction. It is an inappropriate word in connection with the word "obligation," if the latter word is limited to a case of contract. Men contract *debts*, they *incur* liabilities. In the one case they act affirmatively, in the other the liability is *incurred* or *cast* upon them by act or operation of law. The use of this word shows to my mind conclusively that the legislature intended something beyond *contracts*—something not embraced within the word *debt*. They meant duty or liability incurred from acts of fraud, where the law creates the obligation or

gives to the party injured the right of redress. They meant to carry out the principle of punishment for fraud to arrest or imprison in all cases where a cause of action arose *from* or originated *in fraud*, whatever might be the form of the action.

The motion to discharge the defendant from the arrest must be denied.