IN THE MATTER OF AN ATTACHMENT ON THE PETITION OF LESTER B. FAULKNER, CHAIRMAN, &c., RESPONDENT AND APPELLANT, v. JONATHAN B. MOREY AND ANOTHER, RESPONDENTS AND APPELLANTS.

*Power of board of supervisors to authorize an inquiry into town matters—when its proceedings are void for want of jurisdiction over the subject matter— Ch. 190 of 1858,—a condition, not to sue for false imprisonment, cannot be imposed on vacating void process.*

On November 18, 1879, the board of supervisors of Livingston county adopted a resolution appointing a committee to inquire who were railroad

commissioners for the town of North Dansville, if any, with authority to send for persons and papers, and take such proof of the subject-matter as to them might seem expedient, and if it appeared that any person or persons were reputed to be in occupation of such office, to notify him or them to appear before the committee and inquire when and by whom, and for what term of office, such reputed commissioners had been appointed. The relator, the supervisor of the said town, who was appointed chairman of the said committee, made an affidavit setting forth facts tending to show that no railroad commissioners had been lawfully appointed for the said town; that a tax had been imposed upon it and collected, the proceeds of which it was his duty, as supervisor, to pay to such commissioners, to be applied upon the principal and interest of certain bonds issued by the town; that certain persons claiming or reputed to act as such commissioners had been duly notified and summoned to appear before the said committee and produce certain documents, and that they had neglected and refused so to do. Upon this affidavit a justice of the Supreme Court, acting under chapter 190 of 1858, granted an attachment for the arrest of the persons so summoned, and thereafter vacated the same on condition that no action for false imprisonment should be brought on account of the arrest.

*Held*, that as the proposed inquiry was not instituted to enable the board of supervisors to discharge any duty imposed upon it by law, or to enable them to look after the affairs of the county or protect its interests, and the commissioners were not officers of the county, neither the said board nor the committee had jurisdiction of the subject-matter of the proposed inquiry, and that the attachment was properly vacated.

That, as it was vacated for a want of jurisdiction over the subject-matter, the court could not impose, as a condition thereof, a requirement that no action of false imprisonment on account of the arrest should be brought.

CROSS APPEALS from an order made by a justice of this court, vacating his former order, quashing the attachment issued by him herein, and also vacating the attachment on condition that no action be brought for false imprisonment on account of the arrest. The petitioner appeals from so much of the order as vacates the attachment. The defendants appeal from the other parts of the order, including that which imposes the condition above stated.

*Charles J. Bissell*, for the petitioner.

*J. A. Vanderlip*, for the defendants.

SMITH, J.:

This proceeding was had under the provisions of chapter 190 of the Laws of 1858, entitled "An act to enlarge the power of the boards of supervisors."

The first section of the act is as follows :—" Section 1. Whenever the board of supervisors of any county shall deem it necessary or important to examine any person as a witness, upon any subject or matter within the jurisdiction of such board, or to examine any officer of the county, in relation to the discharge of his official duties, or to the receipt or disbursement by him of any moneys, or concerning the possession or disposition by him of any property belonging to the county ; or to use, inspect, examine any book account, voucher or document, in the possession of such officer or other person, or under his control, relating to the affairs or interests of such county, the chairman or president of such board shall issue a subpœna in proper form, commanding such person or officer to appear before such board at a time and place therein specified, to be examined as a witness, and such subpœna may contain a clause requiring such person or officer to produce on such examination all books, papers and documents in his possession, or under his control, relating to the affairs or interests of the county."

The second section prescribes a mode of service of the subpœna.

The third section provides that whenever the board shall have appointed any member of their body a committee upon any subject or matter of which the board has jurisdiction, and shall have conferred upon such committee power to send for persons and papers, the chairman of such committee shall possess all the powers, and be liable to all the duties therein given to and imposed upon the chairman or president of the board.

By the fourth section it is provided that any person duly served with a subpœna and disobeying the same, shall be deemed in contempt, and it is made the duty of the chairman of the board or committee, as the case may be, to report the facts to the county judge, or a judge of the Supreme Court, who shall thereupon issue an attachment commanding the sheriff to attach such person and forthwith bring him before such judge.

The attachment in this case was issued upon the affidavit of the petitioner, Faulkner, which set forth, that he was a member of the board of supervisors of the county of Livingston, and the supervisor of the town of North Dansville, in said county ; and that said board, at a regular annual session, on November 18, 1869, adopted

a resolution containing certain recitals, and directing that a committee of three be appointed by the chairman "to inquire who are railroad commissioners of said town of North Dansville, if any, by virtue of chapter 442, Laws of 1868, and that said committee have leave to report at any time to said board; and have power to send for persons and papers, and take such proof of the subject-matter as to them may seem expedient, and may convene at any time or place for such purpose as may seem to them expedient; and if it shall appear to such committee that any person or persons are reported to be in occupation of such office in and for the town of North Dansville, such reputed commissioners may be served with such notice as the committee may prescribe, to appear before said committee, and said committee shall inquire when, and by whom, and for what term of office, such reputed commissioners, if any, shall have been appointed." The recitals contained in said resolution, as set out in the affidavit, were, in substance, that it is provided by chapter 442 of the Laws of 1868, that upon application to him in the manner therein prescribed, the sheriff of Livingston county shall appoint not more than three freeholders to be commissioners of certain towns in said county; which commissioners may issue bonds in aid of the Erie and Genesee Valley Railroad Company; that it is provided by such law that said commissioners, when appointed, may borrow money on the credit of such towns; that it is provided that money raised by taxation in payment of such bonds shall be paid to such commissioners; that such commissioners are required to give bonds to the supervisor of the town for the faithful discharge of their duties; that the supervisor of North Dansville reports to said board that no such official bond of such officer as is required by law has been in his possession; and that such supervisor has presented to the board a communication from the sheriff, stating that no such officers for said town have been appointed by him, or are shown by the records of his office to have been appointed by him or by any of his predecessors in office. The affidavit also alleged that the chairman of said board appointed the affiant, and two other members of the board, as such committee; that said committee duly met and organized, and after adopting a resolution reciting that the committee were informed

that Alonzo Bradner, Jonathan B. Morey and George Hyland, Jr., were reputed to be in occupation of the office of railroad commissioners of said town, and directing that the said persons be served with notice and forthwith subpœnaed to appear before said committee at a time and place named in said resolution, the committee adjourned to said time and place; and that the said persons were duly subpœnaed to appear before said committee at said time and place, and to produce certain documents named in said subpœna, all which they neglected and refused to do. The affidavit further alleged that said board, at their last annual session, ordered, levied and collected of the taxable property of said town the sum of $12,200, for the purpose of paying the principal and interest upon bonds issued in aid of the Erie and Genesee Valley Railroad Company by said town; that it is the duty of the said affiant, as supervisor, to pay over said moneys when collected and received by him to the railroad commissioners of said town; that deponent has no knowledge as to who are such railroad commissioners, and no information except that it is reported that said Bradner, Morey and Hyland claim that they have been appointed such commissioners; that deponent has been unable to find, either in the office of the clerk of Livingston county, or in the office of the town clerk of said town of North Dansville, any appointment of any persons as railroad commissioners, and that deponent has been informed by the officers in charge of said offices, that no such appointment or oath was on file in their offices.

On that affidavit being presented to the judge, he granted an attachment, and afterwards, on the return of the attachment, all parties being before him, he vacated and quashed the same, on the ground, as appears from his opinion, that the board of supervisors and the committee had not jurisdiction of the subject matter of the proposed inquiry. We think his action in quashing the attachment should be affirmed. The proposed inquiry was not instituted to enable the board of supervisors to discharge any duty imposed upon them by law, or to enable them to look after the affairs of the county or protect its interests. The sole object of the inquiry was to inform the petitioner who were the proper persons to receive the money which it was his duty, as the supervisor of the town, to

pay over. The paying over of the money was a matter in which the county had no interest whatever. It was purely an affair of the town. The commissioners were not officers of the county. The debt to be paid was the debt of the town, and the money was raised by a tax upon the town. It is true the agency of the county had been employed to levy the tax, because the town had no taxing power, but the action of the county had been completed, the money, as the affidavit states, having been assessed, levied and collected. Whatever embarrassment the petitioner labored under, by reason of his lack of information as to whether there were any commissioners of the town, and if any, who they were, the board of supervisors had no authority to make inquisition for his relief.

But it is difficult to see what there was in the case to embarrass the petitioner. He would have been protected by the law in paying over the money to commissioners *de facto*, especially if their claim to be such commissioners was not disputed. That there were persons who acted as commissioners is apparent, from the fact that the board of supervisors assessed and levied the tax. That, the board had no jurisdiction to do, except upon the report of the town commissioners. (Laws of 1868, ch. 442, §§ 4, 7, 8.) It is to be presumed, therefore, that the board had before them a report of persons assuming to act as commissioners of the town, and upon which report the board acted. For aught that appears, the persons so assuming to act were the defendants, who, as the petitioner was informed, were reputed to be in the occupation of the office; and there is no evidence that there were any rival claimants.

But the scope of the inquiry set on foot by the board was not limited to the question whether the defendants were commissioners *de facto;* it included the question whether they were commissioners *de jure*. The resolution of the board directed the committee to inquire when, by whom, and for what term of office the reputed commissioners were appointed, and the subpœna issued by the committee to the defendants directed them to produce their commission or letter of appointment, and such other documents in their control as might be required in the investigation of the subject. It is immaterial whether the object of those requirements was to ascertain whether the appointments were valid originally, or

whether, being valid, the term of office created by them had expired; in either case, the inquiry related to the *right* of the incumbents to the office. The title to the office, neither the board nor its committee had the right to try or determine for any purpose. The writ was properly quashed.

The only other question that need be considered is, whether the judge had power to impose as a condition of quashing the attachment, that the defendants should not bring an action for false imprisonment on account of the arrest. The cases are numerous in which a like condition has been imposed by the courts on setting aside process for irregularity. Many of them were cited by counsel on the argument. But when the *vacatur* is ordered as a matter of absolute right, it seems illogical and unjust to cut down the right by imposing conditions. See *Cash* v. *Wells* (1 Barn. & Ad., 375).

The counsel for the petitioner cites *Rob* v. *Moffat* (3 Johns., 257), *Brown* v. *Treat* (1 Hill, 225), *McGovern* v. *Payn* (32 Barb., 83), *Smith* v. *Corbiere* (3 Bosw., 634), and *Edgerton* v. *Ford* (11 Abb. Pr., 415), as cases in which a like condition was imposed, where the proceedings set aside were, as he contends, not irregular merely, but void. But in each of those cases the court had jurisdiction of the subject matter of the action and of the parties, and the defect complained of related to a matter of practice. In *Rob* v. *Moffat*, a judgment and execution were set aside, it appearing that the *capias* had never been served, notwithstanding the sheriff's return of service. The condition prohibited the defendant from suing for false imprisonment, but not from suing for a false return. In *Brown* v. *Treat*, the declaration contained two counts in *assumpsit*, a third for negligence of the defendants, as warehousemen, in not safely keeping and delivering to the plaintiff certain goods, and a fourth count in trover for the same goods. Treat, one of the defendants, having been arrested on a *ca. sa.*, issued on a judgment obtained in the cause, he was discharged on the ground that the suit was to recover damages for the non-performance of a contract. In *McGovern* v. *Payn*, and *Smith* v. *Corbiere*, it was held that an order of arrest was not authorized by the complaint on which it had been granted. The same point of practice had previously been decided the other way, upon a similar complaint, in *Crandall* v. *Bryan* (15 How. Pr., 48).

FOURTH DEPARTMENT, OCTOBER TERM, 1880.

In *Edgerton* v. *Ford*, the plaintiff had waived his right to arrest the defendant, by taking a note for the debt, and bringing suit upon it. We have not been referred to a case, and we do not know of one, in which a condition not to sue has been imposed on setting aside process as void for want of jurisdiction of the subject matter, and where, consequently, the entire proceeding was a nullity from beginning to end. In such a case, we think the party wrongfully arrested is entitled to an absolute and unconditional discharge. That portion of the order appealed from which imposes the condition should be reversed, and the remainder of the order affirmed.

The defendants are entitled to the usual costs of appeal and disbursements, to be paid by the petitioner.

TALCOTT, P. J., and HARDIN, J., concurred.

Ordered accordingly.