# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, v. JOHN SNAITH AND OTHERS, APPELLANTS.

*Order of arrest — the existence of a right of action must be shown — conspiracy — what facts alleged in the complaint afford evidence of it.*

Where the right to an order of arrest depends upon the nature of an action, it must appear by affidavit that the cause of action stated in the complaint actually exists, and the positive affidavits of parties having knowledge of the facts should be produced, or if not produced, the failure to do so must be satisfactorily explained.

The plaintiff must prove the facts or show that proof of the necessary facts can be procured by him.

It is not enough merely to state a cause of action.

In an action charging a conspiracy as the ground of the cause of action, the specifications of the acts done, so far as they set forth separate causes of action against one or another of the defendants, cannot be regarded, in support of the charge of conspiracy, upon an application for an order of arrest.

APPEAL by the defendants John Snaith and Charles B. Andrews from an order denying an application to vacate an order of arrest in the above-entitled action, which order was entered in the office of the clerk of Oneida county on the 15th day of November, 1889, and after the change of the place of trial of this action the said order was entered in the office of the clerk of the county of Albany on the 18th day of December, 1889.

The action was brought to recover damages alleged to have resulted to the State through an alleged unlawful and fraudulent conspiracy and agreement entered into by and between the defendants, to obtain, receive and convert the State moneys to their own use. The defendant Charles P. Andrews was alleged in the complaint to have been the superintendent of public buildings of the State of New York, and the defendants John Snaith and Timothy J. Sullivan were contractors.

It was further alleged that a committee of the legislature entered into a contract with the said Snaith & Sullivan for certain work to be done at the capitol, in the city of Albany, and it was in reference to the manner of securing this contract, and the execution of the work thereunder, that the charges of conspiracy were made.

*Matthew Hale*, for the appellants.

*John W. Hogan*, deputy attorney-general, for the respondent.

LANDON, J.:

We think this order must be reversed, for the reason that it does. not appear by the affidavits presented that the cause of action stated in the complaint against the defendants actually exists. The right to the order of arrest in this case depends upon the nature of the: action, and the Code requires that it must appear by affidavit that. the cause of action also exists. (§ 557.) The cause of action must not only be stated, but its existence must be made to appear by affi- davit. The arrest of the defendant in a civil action, founded upon an alleged wrongful act, is a provisional and extraordinary remedy, is allowed before final judgment, and, therefore, before it can be. definitely known whether the plaintiff can maintain his case. The provision of the Code that, before the order can be granted, it must appear by affidavit that such a sufficient cause of action exists against. the defendant, is the only positive safeguard of his personal liberty which the law affords to a defendant against whom such a cause of action is stated.

In this case affidavits are submitted, but in none of them is it stated that the affiants knew that the cause of action actually exists; nor do- the statements made by the several affiants, taken together, show that all the facts constituting the cause of action are known among- them. In a legal sense, a cause of action exists when the facts con- stituting it are provable, and, failing more exact proof, the plaintiff can make out his case for an arrest by showing that the proof of the necessary facts is within his procurement. Many of the material facts are here stated upon information and belief. Such a statement is evidence of the good faith of the affiant, but it is worthless as. evidence of the material facts constituting the cause of action, unless. the affiant also states such other facts within his own knowledge as tend to show, with satisfactory certainty, that the material facts are: within the knowledge of others, and provable by them. In the- latter case it is obvious that the affidavits of such other persons should be produced if it is reasonably practicable to do it, for when they are not produced there is danger that the court will be misled by over-statements induced by the zeal of parties and counsel. The

non-production of the affidavits of persons whose knowledge of the facts is relied upon should be satisfactorily excused. When the plaintiff resorts to methods most liable to mistakes he should take the more care to guard against them.

It is believed that these views are supported by a great weight of authority, and are as liberal to the plaintiff as can well consist with a proper regard for the right of personal liberty. (*Martin* v. *Gross*, 22 N. Y. St. Rep., 439; *Thompson* v. *Best*, 21 id., 103; *Crandall* v. *Bryan*, 15 How. Pr., 48; *Whitlock* v. *Roth*, 5 id., 143; *De Nierth* v. *Sidner*, 25 id., 419; *Roderigas* v. *East River Savings Inst.*, 76 N. Y., 316, 323; *Bennett* v. *Edwards*, 27 Hun, 352; *Hallock* v. *Van Camp*, 55 id., 1.)

The cause of action stated in the complaint is that the defendants fraudulently conspired together to defraud the State of money and property by means amounting to a cheat (Penal Code, § 168), and that, in furtherance of such conspiracy and in pursuance of it, the defendants did the several acts set forth in the complaint whereby they did cheat and defraud the State of large sums of money.

In the view which we take of the complaint, and which is professedly the theory of the pleader, the conspiracy is the gravamen of the charge; the specifications of the acts done are specifications in support of the charge of the conspiracy, and although manifestly some of the specifications might have been so pleaded as to set forth separate causes of actions against one or more of the defendants, yet, so far as the order of arrest is concerned, we cannot regard them as so pleaded. The plaintiff, therefore, must show, within the rules already stated, that the cause of action for a conspiracy, as stated, exists, not necessarily in every part and detail of all the charges, but in every material part necessary to constitute the conspiracy, and in every material part of some one of the sufficient specifications under such charge of conspiracy.

The complaint charges that the defendants unlawfully conspired together to cheat and defraud the State of large sums of money substantially in this wise:

1. To procure the passage of chapter 582, Laws of 1888, being an act for the removal of the old ceiling of the assembly chamber in the capitol, and its replacement by a new one.

2. To procure the commission authorized by the said act to make

contracts for such work in behalf of the State, to award the contract therefor to the defendant Snaith, and enter into a contract therefor with him in such fraudulent, deceptive and imperfect form as would permit him, with the co-operation of the defendant Andrews, to do the work in such second-class form and style as would enable them to take as large profits under it as they should venture to take the risk of.

3. To obtain payments as for work properly done, when, in fact, not done, and in excess of what would be due if properly done.

4. To substitute different and inferior plans and specifications for those approved by the commission so as to make it appear that the contract embraced the substituted plans and specifications.

The complaint then charges the acts done in execution of the conspiracy, with the net result of defrauding the State of $250,563.09. It is not charged in the complaint that the conspiracy to procure the passage of the act was followed by any overt act in furtherance of its purpose. The existence of such a conspiracy is not shown to be provable. Respecting the conspiracy to procure the award of the contract to Snaith, it undoubtedly is provable that he was the lowest bidder; that one of the other competing bids was made at his instance; that the contract was awarded to him; that such contract was based upon plans which had been prepared by an architect employed by Andrews, in his capacity as superintendent of public buildings, assuming to act under the authority conferred by the act of 1888 referred to; that such plans and specifications were approved by the commission acting in behalf of the State; that the said contract and the plans and specifications, except the drawings accompanying them, or which were to accompany them, are as set forth in the complaint.

There can be no doubt that the contract was sufficient for the proper performance of the work if the plans and specifications were properly prepared. The act of 1888 provides that the committee " shall have power to employ an architect to make plans and specifications, and all repairs and alterations shall be made in accordance with such plans and specifications after the same shall be approved by said committee, or a majority of them, in writing, and said plans and specifications, when so approved, shall not be changed except upon the written consent of a majority of said committee."

The plaintiffs must repel the presumption of sufficiency which arises from the official preparation and approval of these plans and specifications, and show their ability to prove, not only that they were insufficient, but that they were so made or left in pursuance of the fraudulent conspiracy of the defendants.

For the reasons stated above and in the opinion of the court below, we reject as unreliable all the conjectures and inferences drawn by the affiants from alleged documents and testimony, no part of which the plaintiffs have deemed it important to place upon the record; also the conversations of persons who, refusing to verify their statements, have been excused from verifying them.

The affidavit upon which the plaintiffs must mainly rely to show that they can prove this part of their case is made by A. Russell. Mr. Russell was one of the committee of architects appointed by the assembly to examine the assembly ceiling and make report thereon. This report is presented with Mr. Russell's affidavit. The report states that the specifications are general in character; that they are not adequate unless accompanied by complete, clear and carefully prepared drawings; that twenty-seven drawings were first submitted to these experts, and twenty-four additional drawings later. Upon the testimony or proofs presented to the committee of experts, they report that only nine of the fifty-one drawings existed prior to the award of the contract. These nine, the committee report, are so vague and incomplete as to render any competitive bids upon them useless as estimates of the value of the work. The committee, therefore, express doubt of the *bona fides* of such bids. The committee do not say that the nine drawings, taken in connection with the specifications, do not indicate the nature, character and extent of the work, but they do say that they do not do so adequately. The committee, however, do find them sufficiently specific and clear to enable them to report five substantial subsequent departures from them in the subsequent performance of the work. The committee do not report upon the effect of the forty-two other drawings which they assume were made subsequently to the award of the contract. They report that twenty-four of them were apparently used in the construction of the work, and they maintain a silence as to the other eighteen, except that most of them were made in pencil, without date, unsigned and without title.

A Mr. Rowe, as it elsewhere appears, was the chief draftsman and architect. His name was unknown to the committee of expert architects as an expert name. Mr. Russell states in his affidavit that "all the facts stated in said report are true." This language is equivocal in form, but we do not think any equivocation was intended. What the experts mean to express is, that, upon the conclusions of fact which they inferred to be true from the evidence and appearances before them, the specifications were, in their opinion, at the time the award was made, inadequate to indicate as fully as was necessary, the extent, details and quality of the work required. Their opinion upon established architectural facts is, without doubt, entitled to confidence, but their assumption that the facts, which they assumed as the basis of their opinion, were established, in no wise tends to establish them. Looking into the other affidavits in the case we fail to find that of the fifty-one drawings in the case only nine were in existence at the time the award was made. But assuming that the plans and specifications were imperfect, we still need something more than conjecture to show that the imperfection is due to a criminal conspiracy.

The complaint is so framed as to suggest the idea that the people may fail upon this part of their case, and if so, that they may charge the conspiracy as beginning after the award and execution of the contract, and as embracing the fraudulent departure from it as made, and the substitution of inferior and less expensive work, and the procurement of over-payment for that. The papers presented do show that the plaintiffs will be able to prove that Snaith did not perform the contract as made, and in many respects substituted an inferior and different work for that which he had agreed to perform, and that he obtained payment beyond what was his due.

It also appears that the defendant Andrews approved the bills upon which payments were made to Snaith. This, however, does not show that a conspiracy between Andrews and Snaith is provable. Facts must be presented tending to show that Andrews' approval was collusive and in pursuance of the conspiracy. The fact is shown that Mrs. Andrews has acquired some property which may have been given to her by or through Snaith, but such gift does not appear to be provable. That Andrews and Snaith were friendly and intimate is probably provable. If there were evidence of collusion and con-

federacy, such evidence would tend to confirm it, but it does not of itself tend to show it.

There is a charge that Andrews obtained $7,500 for alleged expenses of the commission upon his promise to produce the vouchers, which promise he did not fulfill. There may be a separate cause of action against Andrews for this sum, as there may be against Snaith for defrauding the State.

But, as before remarked, the order of arrest must fail with the failure to show that the charge of conspiracy is provable. It cannot be sustained by showing separate causes of action against the defendants severally; since, in such case, the order would be granted for one purpose and perverted to another, to the subversion of the right of personal liberty. We do not mean to say that the people may not be able to maintain the cause of action they have stated; what we do say is, they do not now show their ability to prove it with that clearness which can justify an order depriving the defendants of their liberty. Undoubtedly, great labor must be performed, and great difficulties surmounted, to make a clear presentation of ability to prove such a case. Possibly this fact, and the gravity of the wrong charged and the indignation it would naturally excite, may have induced some reliance upon a judicial presumption against the defendants. Be this as it may, we must take care lest we trench upon the safeguards of liberty itself.

The order should be reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.

LEARNED, P. J., and MAYHAM, J., concurred.

Order reversed, with ten dollars costs and printing disbursements, and motion to vacate granted, with ten dollars costs.