## THE PEOPLE *vs.* SAMUEL P. TOWNSEND.

H. being the administrator and C. the administratrix of an estate, a citation was issued by the surrogate, on the petition of H., to the persons interested in the estate, to attend the final settlement of the accounts of H. as administrator. C. was present during the proceedings, and took part in the accounting, and all the parties interested were represented, before the surrogate. H. was the acting administrator, and was held accountable, by the surrogate, for the whole estate of the deceased. *Held* that the accounting was to be deemed a final settlement of the whole estate — an entire proceeding — and not a partial settlement of the accounts of one of its representatives. And that it was not necessary that both the administrators should make an application for a final account.

When a citation has been issued against both the administrators of an estate, to render an account, upon its return one or both of them has a right to ask for a citation to the persons interested in the estate, to attend the final

The People *v.* Townsend.

settlement of the accounts of the administrator or administrators applying, which will bring in and conclude all the parties.

So long as there is authority on the part of a surrogate to call an administrator to account, and his decree made upon such accounting does not indicate a corrupt intent, or show upon its face that the court has been perverted to accomplish a fraudulent and an illegal purpose, and the decree remains unrevoked, it cannot be pronounced fraudulent and void, in a collateral proceeding, however mistaken the surrogate may have been in his view of the facts, or the law.  ·

Where the main question before a jury was whether a decree was procured by fraud and collusion, and they, after hearing evidence on both sides, have decided the question in favor of one of the parties, there is no rule of law which allows the court to interfere with, or disturb, their verdict.

Neither will a new trial be granted where the testimony is contradictory, and the character and credit of the witnesses questioned, on the ground that the verdict is against the weight of evidence.

An action upon an administrator's bond should be brought in the name of the people.

Where, in an action upon an administrator's bond, against the surety, the plaintiff introduces testimony to show that certain claims against the principal in the bond, allowed by the surrogate in his decree made on the final accounting of the administrator, were fair and honest demands, the defendant should be allowed to show, by rebutting evidence, that the claims so allowed by the surrogate were not fair and honest; that the parties to the accounting did not act in good faith; and that the decree of the surrogate against him was procured by fraud and collusion.

Although, ordinarily, an inquiry in reference to the subject matter of an accounting before a surrogate would not be competent, in a collateral proceeding; yet in a case where the defendant was seeking to invalidate a decree there made, by proof that it was procured by fraud, collusion and conspiracy, and where similar evidence had already been introduced; it was *held* that the most liberal rule should have been allowed to prevail, and any testimony which might tend to throw light upon the question of intent, and the good faith of the parties, should have been admitted.

THIS was an action against the defendant as one of the sureties in a bond taken by the surrogate of the county of Albany, from Huldah M. Clapp and William G. Howard, as administrator and administratrix of &c. of Reuel Clapp, late of Albany, deceased.   The bond is in the penal sum of $200,000, dated January 24, 1850, and is signed by Huldah M. Clapp, administratrix, William G. Howard, administrator, and the defendant and Oliver W. Clapp as sureties.   The

suit was brought upon a decree made by the surrogate of the county of Albany, upon a final accounting, bearing date June 21, 1855, by which Howard, the administrator, was directed to pay, within sixty days from June 21, 1855, $86,665, as hereafter mentioned. The action was commenced May 20, 1856, and was tried before Justice HOGE-BOOM and a jury, at the Albany circuit, in January, 1858. It appeared on the trial that Reuel Clapp, of Albany, died intestate, January 17, 1850, leaving a widow, Huldah M. Clapp, and four children. On the 26th of January, 1850, letters of administration upon his estate were granted by the surrogate of Albany to Huldah M. Clapp, the widow, and William G. Howard. The defendant, Samuel P. Townsend, and Oliver W. Clapp, a son of the intestate, became sureties on the administration bond. In February, 1853, Perry Yates, assignee of the interest of Oliver W. Clapp in his father's estate, applied to the surrogate of the county of Albany to compel an accounting by the administratrix and administrator. In pursuance of this application, the surrogate issued a citation requiring the administrator and administratrix to account. This appears to have been only served on Howard, the administrator. On the return of this citation, on Howard's application, the surrogate issued a citation to the persons interested in the estate of the intestate, to appear on the 22d of August 1853, to attend " the final settlement of the accounts of William G. Howard, an administrator of all and singular the goods, chattels and credits of the said deceased, on the application of the said administrator." All the parties interested appeared and were represented upon the accounting before the surrogate.

In October, 1853, some of the parties went to New York to see the defendant in respect to a claim alleged to exist in favor of Clapp's estate, growing out of an alleged transfer by the defendant of notes and accounts belonging to the Albany branch of the business of Clapp & Townsend, for an alleged violation of the contract of division, made on the 1st of Feb-

The People *v.* Townsend.

ruary, 1850. The defendant denied the existence of any claim against him, and offered to annul the contract of division and have an accurate accounting of the firm's business. It was suggested to have a suit brought by the administrators against Townsend; but none was commenced. On the 31st of January, 1855, Howard filed his account as administrator. The matter was then adjourned to a day in April, when some proceedings were had, and then to the 4th of May, 1855, and on that day the proceedings were closed and submitted to the surrogate. A decree of the surrogate was finally made, bearing date June 21, 1855, which recited that the proceedings had been instituted by Howard, one of the administrators of, &c., and also that from his account, and the testimony taken, it appeared that Howard was the acting administrator in the settlement of the estate, and accountable for the whole estate; and charging him with the whole amount of money actually collected and received, being $56,809.71, and giving him credit for $48,075.79, leaving a balance to be paid over by him of $8733.92. It was further adjudged that Howard be charged with the sum of $60,993.23, with interest from February 1, 1851, " that being the amount lost to the estate of the said Reuel Clapp, deceased, from and by reason of the neglect and omission of the said William G. Howard, as such administrator as aforesaid, in neglecting and omitting to collect that sum out of certain claims and demands which were legal, valid and collectable, and which ought to have been collected by him, the said administrator, but which, by reason of such neglect and omissions, have become and are entirely lost to the estate of the said deceased." After disposing of costs, &c., the decree finds a balance for distribution of $86,665, which Howard is directed to pay within sixty days, as follows: To Huldah M. Clapp, widow of Reuel Clapp, deceased, $30,221.66; to Joseph Carey, general guardian of Charles F. Clapp and Edwin A. Clapp, infant children and next of kin of the deceased, $28,221.66; to Sarah, wife of Thomas J. Van Alstyne, one of the chil-

dren and next of kin of the deceased, $14,110.83, and to pay
the surrogate $14,110.83, on account of the share of Oliver
W. Clapp, to be disposed of according to law, the same being
claimed by John B. Borst as against Oliver W. Clapp, one
of the heirs and children of the intestate. The decree con-
cludes as follows: "And it further appearing to this court
that the said Huldah M. Clapp, as administratrix as afore-
said, hath fully accounted for all the property of the estate
received by her, it is ordered, adjudged and decreed that she
has fully administered upon the property taken under her
charge, and is not therefore chargeable with any deficiency
in these proceedings, but on the contrary has fully adminis-
tered as above stated." The defendant gave evidence for the
purpose of showing that the decree was procured and entered
by the fraud and collusion of those concerned in the estate
of Clapp, and with a view of holding the defendant as
surety on the administration bond, to a large amount. The
intestate Reuel Clapp and the defendant Townsend had been
for many years engaged in the business of manufacturing
and vending sarsaparilla, under the firm name of Clapp &
Townsend. They had offices in New York and Albany, the
former managed by Townsend and the latter by Clapp.
Prior to the death of Clapp, the firm of Clapp & Townsend
had sold the good will of their sarsaparilla concern for
$100,000, to Nostrom & Bache. Soon after the death of
Clapp, and the granting of administration upon his estate,
Townsend proposed to divide the assets of the old firm, giv-
ing to the Clapp estate all that pertained to the Albany
office, and retaining himself all connected with the New
York office—he paying the debts of the firm, amounting to
about $80,000, and indemnifying the Clapp estate against
them. This proposition was finally accepted, and consum-
mated by a written contract between Townsend and the ad-
ministrators, bearing date the 1st day of February, 1850.

Testimony was also given on behalf of the defendant for
the purpose of showing that the decree of the surrogate was

entered by consent, with a view of reaching the defendant, under an agreement that they were not to proceed against Howard, the administrator, who was insolvent and unable to pay. About $30,000 of the amount charged against Howard, the administrator, was for neglect to prosecute Townsend for an alleged claim in favor of the estate against Townsend, growing out of the transfer of accounts under the contract between the administrators of the estate and Townsend; $10,000 was for alleged damages by reason of a provision in the contract of sale of the good will of the sarsaparilla business to Nostrom & Bache, and $20,000 or $30,000 for an alleged loss in accounts transferred, by reason of their being on commission.

A number of questions arose and were decided on the trial, which are especially considered in the opinion. The jury rendered a verdict in favor of the plaintiff for $104,617.89. On motion at special term a new trial was denied. The defendant appealed to the general term, from the order denying a new trial.

*J. H. Reynolds*, for the appellant.

*L. Tremain*, for the respondent.

*By the Court*, MILLER, J. This was an action brought in the name of the people, upon an administrator's bond, against the defendant as one of the sureties. Letters of administration were granted on the estate of Reuel Clapp, deceased, to William G. Howard and Huldah M. Clapp, the widow of Reuel Clapp. An application was made by one of the parties in interest to compel an accounting. The accounting was had before the surrogate of Albany county, and resulted in a decree against Howard the administrator, charging him separately with a large amount as acting administrator, being the whole estate. A considerable portion of the amount charged upon Howard was for losses to the estate by reason

of his neglect and omission, as administrator, to collect claims and demands against the defendants, which were adjudged by the surrogate to be legal and valid, and which he ought to have collected.

Several questions arose upon the trial of the cause, which require examination. It is insisted by the defendant that the accounting before the surrogate was only a final accounting of one of the several administrators of the estate, and hence the surrogate had no jurisdiction in the premises. Although the decree recites that the citation was issued on the petition of Howard the administrator, yet it appears that the administratrix was present during the proceedings, and took part in the accounting, and that all the parties interested were represented. It also appears from the decree itself and from the evidence adduced, that Howard was the acting administrator in the settlement of the estate, and was held accountable for the whole estate of the deceased by the surrogate. It appears to me, therefore, that the accounting was a final settlement of the whole estate; an entire proceeding and not a partial settlement of the accounts of one of its representatives. Nor was it necessary that both the administrator and administratrix should make an application for a final account. A citation had been previously issued against both, and upon its return one or both of them had a right to ask for a citation which would bring in and conclude all the parties. (2 R. S. 92, § 52. Id. 93, § 60.) This was done, and as they participated in the proceedings I see no force in the objection.

It is claimed that the decree is fraudulent upon its face as against the defendant, as one of the sureties on the administration bond. The decree provides for the payment of a large amount by the administrator, which it charges upon him separately, by reason of an alleged neglect in not collecting certain demands existing against the defendant, which were lost to the estate in consequence of such neglect. While it exonerates the administratrix from neglect on her part, it makes

the administrator liable for an alleged failure to perform his duty.  One administrator is not, ordinarily, responsible for moneys received and expended by or for the wrongful act of his associate ; but in a case where both have the same power to act and fail to do so, can one of them alone be made personally liable and the other entirely exonerated ?  In this case the administrator had the principal charge and management of the business of the estate, yet at the same time there was nothing to prevent the administratrix from taking measures to prosecute the defendant for the alleged demand.  She had full knowledge of its existence, and had undoubted authority to prosecute a suit in the name of both for its recovery.  Although she relied upon her associate to attend to the business of the estate, she could hardly thus relieve herself from the performance of a plain duty.  It is at least very questionable whether this excuse is a legal bar to a claim against her for a neglect so clear and palpable.  Were this an original question, I should be inclined to hold that it was not sufficient to exonerate her from liability. (*Slaughter* v. *Froman*, 5 *Monr.* 19.   *Edwards* v. *White*, 12 *Conn. Rep.* 28.   *Hoell* v. *Blanchard*, 4 *Dessau. Ch. R.* 21.   *Collins* v. *Carlile*, 7 *B. Monr.* 13.   *Green* v. *Hapberry*, 2 *Brock.* 403. *Morrow* v. *Peyton*, 8 *Leigh*, 54.)   The surrogate has however passed upon the question, and after having judicially determined it, when there has been no appeal from his decision and it remains unrevoked, can it be said there is sufficient evidence to stamp the decree as fraudulent upon its face and to authorize this court, in a suit upon the bond, to set it aside for that reason ?  For the purpose of arriving at a proper determination of this question, it is perhaps appropriate to examine the surrounding circumstances of the transaction. It appears that Howard was insolvent ; that Mrs. Clapp was responsible to some extent, and was a distributee of the estate and provided for in the decree to a considerable amount. It is claimed that the effect of the decree is to relieve Mrs. Clapp from her obligation as principal, to the defendant, as

her surety, and to compel him to pay a large amount, arising from her neglect, and to deprive him of his remedy over against her; that it also compels the defendant to pay money for the benefit of his co-surety, Oliver W. Clapp, although he has a much larger claim against him than the amount decreed, for contribution. Conceding that such is the legitimate effect of the surrogate's decree and that it operates to produce great injustice, that the surrogate made an entire mistake and erred in his decision, it is scarcely sufficient to establish fraud upon the face of the decree. It does not show upon its face that the surrogate's court was perverted to accomplish a fraudulent, and an illegal purpose. So long then as there was authority on the part of the surrogate to act in the premises, and there is nothing apparent to show a corrupt intent, and the decree remains unrevoked, it would be exceedingly dangerous to pronounce it fraudulent and void upon its face. However mistaken the surrogate may have been in his view of the facts or the law, I cannot assent to the proposition that the decree can be disregarded on that account.

The decree being *valid* upon its face, do the facts connected with the accounting, as developed on the trial, necessarily show that it is invalid as against the defendant for fraud and *collusion?* This was the principal question litigated, and presented to the jury, on the trial, It is true that it appeared that the administrator assented to the decree against himself alone, and there are circumstances tending to establish a collusive and fraudulent arrangement by which the decree was permitted to be made, with the express design and ultimate object of compelling the defendant, as one of the sureties on the bond, to pay the amount of the alleged claim against him. It also appears that a considerable portion of the large claim presented and allowed against the administrator was not very strongly contested. Without entering upon a discussion of the evidence on this subject, it is sufficient to say these circumstances were sought to be contradicted, and the evidence

The People v. Townsend.

is at least conflicting. It is so upon the question of intent. The alleged fraud and collusion was investigated, and as I understand the rule of law applicable to such cases, the finding of the jury disposes of the matter. The verdict must be clearly against the weight of evidence, to justify an appellate tribunal in setting it aside. Whatever, therefore, may be the opinion of the court as to the weight of the testimony upon the trial, the jury, whose province it was to weigh and pass upon it, and who saw and heard the witnesses, have thought the preponderance was against the defendant. (*Culver* v. *Avery,* 7 *Wend.* 380.) Neither will a new trial be granted where the testimony is contradictory, and the character and credit of the witnesses questioned, on the ground that the verdict is against the weight of evidence. (*Winchell* v. *Latham,* 6 *Cowen,* 682.) I do not discover that this case is brought within that class of cases which allows a new trial when it is apparent from the whole transaction that the verdict is entirely against evidence. (3 *Gra. & Wat. on New Trials,* 1206, 1207, 1208.) It appears to me that the case is characterized by circumstances which rendered it peculiarly proper for the determination of a jury, and there is not such a preponderance in the weight of the evidence as would authorize a new trial upon that ground. The main question before the jury was whether the decree was procured by fraud and collusion. They have decided this question, after hearing evidence on both sides, in favor of the plaintiffs, and there is no rule of law which allows the court to interfere with or disturb their verdict in such cases. (1 *Gra. & Wat. on New Trials,* 353. 10 *John.* 101. 3 *id.* 180.)

I think the action was properly brought in the name of the people. (*The People* v. *Norton,* 5 *Seld.* 176. *The People* v. *Law,* 3 *Abb.* 450. *The People* v. *Cram,* 8 *How. Pr. R.* 152.) Nor do I find any valid grounds for the motion made by the defendant to dismiss the plaintiff's complaint.

The defendant's counsel, upon the cross-examination of the witness Calanan, proved that the witness had a conversation

with Mrs. Clapp in reference to her duty in prosecuting the claim against Townsend. The plaintiff, on the re-direct examination, asked the witness what Mrs. Clapp said in reply to the advice given her to sue Townsend? This was objected to by the defendant's counsel, and the objection overruled. The evidence was clearly proper, and the plaintiff had a right to show the whole conversation.

The defendant's counsel offered to prove by Horace Wyman, for the purpose of rebutting the plaintiff's testimony on that subject, that he, Wyman, drew the decree which was entered by the surrogate, exclusively from the skeleton draft furnished by Schenck, one of the counsel, and that he inserted from that the particular sums which appear in the decree. Calanan, one of the plaintiff's witnesses, swore on his direct examination that he thought Schenck drew a form of a decree, and that Wyman had something to do with it, and he drew some part of it. It was clearly proper to show all the facts in regard to the drawing of the decree. It was deemed material to the issue on trial, and I think the defendant had a right to show that Wyman was merely acting under the direction of the persons engaged in transacting the business before the surrogate, and that the amounts were furnished by them. I cannot therefore arrive at any other conclusion than that this evidence was improperly excluded by the justice on the trial.

The remaining offers of evidence made by the defendant on the trial deserve a careful consideration. They comprised testimony which seriously assailed the plaintiff's claim, and the good faith and fairness of the proceedings before the surrogate. The decree was mainly founded upon an alleged demand against Howard, the administrator, for neglecting to prosecute the defendant. With a view of characterizing the transaction, to rebut the proof given by the plaintiff, and for the purpose of showing that the claim against Townsend was a false and pretended one, without any foundation whatsoever, the defendant offered to prove that certain property

which the plaintiff attempted to show and claimed was embraced in the division between the estate and the defendant, and was transferred to the estate and constituted a portion of the claim for which the decree was made, was not embraced in the division, and that none such existed, belonging to the firm of Clapp & Townsend, or either of them. Evidence had been introduced by the plaintiff adverse to this proposition. The defendant also offered to prove that the transfer of the accounts from Albany to New York preceded the proposition for a division ; that they belonged to the New York house, and were taken to New York to be applied to meet the maturing paper of the firm of Clapp & Townsend, and that Mrs. Clapp and Mr. Howard knew these facts at and before the time of the transfer. It was these accounts which constituted a large portion of the claim for which the surrogate made a decree against Howard upon the ground that they had been fraudulently transferred by the defendant, and that the administrator had neglected to prosecute Townsend for the same. The defendant also offered to prove that all the accounts transferred in the contract of division were for goods sold on commission, and that this was known to the administrator and administratrix at and before the time when the division was made ; that the books containing the accounts were examined by Mrs. Clapp and Mr. Howard before executing the contract of division, and that the accounts as there entered purported upon their face to be not absolute sales, but charges to commission agents for goods to be sold on commission ; that the books were in the possession of the administratrix at the time of the accounting, and were not produced before the surrogate. These offers were made collectively and severally as evidence upon the question of good faith of the proceedings in obtaining the decree, and to rebut the proof given by the plaintiff tending to establish that they were substantial claims against Townsend in favor of the estate, and that the parties to the accounting were acting in good faith. This evidence was objected to on the grounds,

1st. That it was cumulative and not rebutting. 2d. That it involved an inquiry into the merits of the original claims. The evidence was rejected by the justice partly on both grounds.

*First.* Was the evidence cumulative and not rebutting? The defense to the plaintiff's action was principally upon the ground that the decree of the surrogate had been procured by fraud and collusion, by a conspiracy and combination to reach the defendant as one of the sureties on the bond. The defendant, for the purpose of establishing the allegation of fraud, introduced the evidence of Howard taken by virtue of a commission issued in the cause, in which he swears, substantially, that the decree of the surrogate was entered and made by the consent of the parties, for the purpose of reaching the defendant as surety on the bond, under an arrangement that it was not to be enforced against him, Howard. The testimony of Edward T. Schenck, who was also sworn as a witness for the defendant, was mainly to the same point. He however testified as to the items which composed the amount charged against Howard as administrator, which it was alleged was lost to the estate by reason of Howard's neglect to prosecute the defendant, and generally as to the proceedings before the surrogate. The defendant then rested. The plaintiff called James Calanan, jun., and several other witnesses, to contradict the defendant's evidence. A considerable portion, however, of the plaintiff's evidence was for the purpose of showing that the demands against Townsend, for which Howard had been charged, in the decree, by reason of his neglect to prosecute, were substantial claims, in favor of the estate, and that the parties acted in good faith upon the accounting. The surrogate's minutes of the evidence were also introduced, containing the testimony of Howard and Mrs. Clapp. It appeared that Howard, when he was first examined, only testified generally as to the alleged demands against Townsend, and that Mrs. Clapp's evidence was the same in substance as Howard's. Upon being recalled,

some time afterwards, Howard gave additional evidence as to the particulars of these claims.   Mrs. Clapp was also sworn as a witness for the plaintiff upon the trial, after the defendant had rested.   I think that the whole case in reference to the nature, items and substantial character of the alleged demands against Townsend, and the good faith of those who were engaged in the proceedings before the surrogate, had not been fairly and fully presented on the trial, prior to this period.   It was only then that Mrs. Clapp and the witnesses adduced by the plaintiff on this subject, and the statements made by them, were in a position to be attacked.   To rebut this evidence ; to contradict these witnesses ; to show that the alleged claims were not substantial ; to prove bad faith on the part of Howard, Mrs. Clapp and those associated with them, in reference to the facts proved, and to establish a knowledge of facts by the representatives of the estate which would be inconsistent with the fairness and honesty of the claims charged upon Howard, the defendant made these offers of evidence.   In view of all the facts, and the surrounding circumstances, I think that this was the first time when the defendant had a right to assail Mrs. Clapp and the other witnesses introduced by the plaintiff, and that the testimony was proper as rebutting evidence to that which had been mainly presented to show that the claims against the defendant, allowed in the decree, were substantial, honest and bona fide demands, and that it should have been admitted.   It was not rejected as wholly cumulative, but partly on the ground that it involved an inquiry into the merits of the original claims against Townsend.

*Second.*  Was the evidence properly excluded because it involved the merits of the original claim and not the immediate question of fraud and collusion in the proceedings ?   The defense was of a character which admitted of a wide and extended field of inquiry — the largest latitude of evidence. Fraud at all times opens a door for the most rigid scrutiny, the most searching investigation.   Although, ordinarily, an

inquiry in reference to the subject matter of an accounting before a surrogate's court would not be competent in a collateral proceeding, yet in a case where the defendant was seeking to invalidate a decree there made, by proof that it was procured by fraud, collusion and conspiracy, and where similar evidence had already, as I think very properly, been introduced ; the most liberal rule should have been allowed, and any testimony which might tend to throw light upon the question of interest and the good faith of the parties should have been admitted. (*Hendrickson* v. *The People*, 10 *N. Y. Rep.* 13. *Suell* v. *True*, 33 *Maine Rep.* 367. 1 *Greenlf. Ev.* § 57.) The defendant proposed by his offers to strike at the very foundation of the subject matter in controversy, and to prove facts which established bad faith on the part of the administrator and administratrix ; to show in fact that they had knowledge of transactions at the time which were utterly irreconcilable with the justice, honesty and integrity of the proceedings in obtaining the decree. If certain property at Albany was not embraced in the division, as was claimed, and none such existed, belonging to the firm ; if certain accounts were transferred to Townsend before the division, and the facts in regard to them were at the time known to Mrs. Clapp and Howard ; if they knew that the accounts transferred in the contract of division were all accounts on commission, at the time the contract was made ; if they had examined the books before executing the contract of division, and knew that the accounts there entered were charges for goods sold on commission, and did not produce them before the surrogate, then a large portion of the amount for which Howard was charged, in the decree of the surrogate, had no soldid basis to rest upon. The testimony was certainly material and important to the issue made upon the trial. At least it would tend to establish a want of good faith and the fraud and collusion alleged. If such would be the effect of the evidence, it is no answer to say that it involved the merits of the original claims. The merits had already been in-

vestigated to some extent, and from the necessity of the case and the nature of the defense the inquiry was unavoidable. I think, therefore, that the justice erred in excluding the evidence. I discover no error in the charge made by the justice to the jury, nor in the decisions made upon the requests of the defendant's counsel to charge the jury; but, for the reasons already given, a new trial should be granted, with costs to abide the event.

[ALBANY GENERAL TERM, March 3, 1862. *Hogeboom, Potter* and *Miller*, Justices.]