DETERMINED IN THE

# FOURTH DEPARTMENT,

AT

## GENERAL TERM,

### January, 1884.

---

THE PEOPLE OF THE STATE OF NEW YORK EX REL. EDWIN A. NASH, SURROGATE OF THE COUNTY OF LIVINGSTON, APPELLANT, *v.* JAMES FAULKNER AND HENRY J. FAULK-NER, SURVIVORS OF SAMUEL D. FAULKNER, DECEASED, RESPONDENTS.

*Surrogate's bond — right of the people to bring an action thereon against the sureties thereto — liability of surrogate to account for moneys received by him — what facts are required to excuse his failure to pay the same over to the person entitled thereto.*

In 1878 one Finley, a resident of Livingston county, died intestate, and thereafter administrators of his estate were duly appointed by the surrogate of that county. Subsequently a parcel of real estate situated in that county, and of which he had died seized, was sold upon the foreclosure of a mortgage, and the surplus moneys arising upon the sale were paid first to the county treasurer and thereafter, in pursuance of an order made upon the application of the administrators, to the surrogate. Thereafter, upon an application by the administrators for leave to mortgage, lease or sell another parcel of real estate left by Finley in that county, an order was made by the surrogate directing it to be sold, and subsequently the proceeds arising upon that sale were paid to the surrogate. Pending proceedings instituted by the administrator for the purpose of distributing the said moneys among the persons entitled thereto, and before the claims of the various creditors of the estate had been finally determined, the surrogate, on August 9, 1878, died.

The relator, the present surrogate, having demanded payment of the moneys so deposited with his predecessor from the latter's administrators, and payment thereof having been refused, brought this action in the name of the people against the sureties on the official bond of the deceased surrogate.

*Held,* that the people were entitled to maintain the action under section 449 of the Code of Civil Procedure, as the trustees of an express trust.

Upon the receipt of the said moneys, the surrogate deposited them with one Cone, a private banker doing business in the village where the office of the surrogate was located, and received a certificate of deposit therefor, payable to his own order as surrogate, with interest at five per cent if the moneys were allowed to remain for a specified time. Cone failed and made a general assignment in November, 1877. Upon the trial of this action the court found that Cone was a banker in good standing and credit, doing a general banking business at Geneseo; that the several deposits of money so made as aforesaid were made in good faith and with the intention of benefiting the creditors of the estate of Finley, and that the surrogate had no knowledge of the insolvency of Cone before his failure and assignment.

*Held,* that this finding did not relieve the surrogate or his sureties from the obligation imposed by his bond, to account for and pay over the moneys.

To constitute a defense it should at least be shown that in the management of the fund the surrogate had acted without fault, and that he had been free from all negligence. (Per Barker, J.)

*It seems,* that as the obligation imposed upon the surrogate and his sureties by his bond is assumed in compliance with a legal requirement exacted by the State from a public officer, nothing will excuse its performance but a loss or destruction of the money which may have come to his hands by the act of God or the public enemy. (Per Barker, J.)

Appeal from a judgment, entered upon a decision at Special Term, dismissing the plaintiff's complaint.

Samuel D. Faulkner was surrogate of Livingston county during all the time mentioned in the proceedings had in the surrogate's court for that county which are involved in this action. He died in office on the 9th day of August, 1878. Samuel Finley, a resident of that county, died in 1876, seized and possessed of two parcels of real estate situated in that county, and administrators on his estate were duly appointed and entered upon the discharge of their duties. At the time of the death of Finley there was a mortgage upon one of the said parcels of his real estate, and thereafter such mortgage was foreclosed by action in this court, and the surplus moneys, amounting to $1,657.46, were paid to the treasurer of Livingston county. Afterwards, and on the 22d day of June, 1876, on the application of the administrators, an order was made directing the treasurer to pay the same to the surrogate, and on the same day they were paid over to the surrogate, who deposited $1,212.90 of such ,moneys with James J. Cone, a private banker,

doing business in the village of Geneseo, where the office of the surrogate is located, and received a certificate of deposit therefor, payable to his own order as surrogate on demand, with interest at five per cent if the funds remained on deposit until the first day of December following. On the 24th of July, 1876, the administrators of Finley instituted proceedings by petition before the surrogate praying for authority to mortgage, loan or sell the other parcel of real estate for the payment of the debts owing by the estate. Such proceedings were had in the matter that, prior to the 9th day of April, 1877, such real estate was sold, the sum realized therefrom being $1,591.50, which was also on that day deposited with the same private banker to the credit of the surrogate, with five per cent interest if the moneys remained on deposit for three months. On the sixteenth day of April following, on the application of the administrators, further proceedings were had before the surrogate for the purpose of distributing the moneys derived from the real estate among the persons entitled thereto, and in June following various claims of creditors of the estate of Samuel Finley were established in said proceedings before the surrogate, and such proceedings were then and thereafter from time to time adjourned, upon the application of various creditors of said estate, to enable them to prove their claims, and such proceedings were pending and undetermined at the death of the late surrogate, and since his death no other action has been had therein in said surrogate's court. That on or about November 1, 1877, the said James J. Cone, who, up to that time, had remained a banker in good standing and credit, made an assignment of all his property for the benefit of his creditors, and his estate was then discovered to be, and was, largely insolvent. On the 1st day of November, 1877, Faulkner died intestate, and letters of administration on his estate were issued to Henry J. Faulkner and James D. Faulkner, these defendants, who were also sureties on his official bond. The relator, Edwin A. Nast, is the incumbent in the office of surrogate, and as such demanded of the administrators of his predecessor payment to him of the funds mentioned. This being refused, this action was commenced against the defendants as sureties on the official bond of the deceased.

The plaintiff's complaint was dismissed, with costs, and from the judgment the plaintiff appeals.

*James Wood*, for the appellant.

*Faulkner & Bissell*, for the respondent.

BARKER, J. :

At the time of the death of the late surrogate, as well as at the time of the commencement of this action, the only persons having any legal or equitable title to the funds derived from the sale of the real estate sold in pursuance of the order of the surrogate, were the creditors and heirs-at-law of Samuel Finley. The same persons have a like interest in the surplus moneys, subject, however, to such liens thereon as may exist in favor of any incumbrances subsequent in point of time to the mortgage which was foreclosed. The legal custodian of such funds is the present surrogate, the representatives of the late surrogate having neglected to pay over the same to the incumbent. This action is brought against the defendants, the sureties on his official bond, to recover the funds thus withheld. The trial court held that the action cannot be maintained in the name of the people as plaintiff, and upon this sole ground dismissed the complaint.

The proceedings to sell the real estate of the deceased were initiated under the provisions of the Revised Statutes prior to September 1, 1880, and are, therefore, excepted from the operation of the provisions of the Code of Civil Procedure relating to the sale of real estate of deceased persons for the payment of their debts. (Sec. 3347, subd. 11.)

The proceedings were in all respects regularly conducted up to and including the payment over of the money derived from the sale by the administrators to the then surrogate. Thereafter further proceedings were had in the matter, with a view of distributing the same among the creditors of the deceased and his heirs-at-law, and before any final order was made passing upon the claims of creditors, the late surrogate died, and since then no other steps have been taken in the matter.

Until the claims of creditors are finally passed upon and a record made of the same, and the amounts due each creditor ascertained, there can be no order or decree of distribution made as required by the statute. On perusing the statute it will be observed that where a sale of the premises has been ordered, and has actually taken place, the administrators are required to bring the avails derived from the

sale into the office of the surrogate for the purpose of distribution, and to be retained by him for that purpose. (2 R. S., 106, § 35.) The surrogate is not authorized to make a distribution of the moneys arising from the sale, to and among the creditors whose claims were passed upon and adjudged valid on the hearing had in the earlier part of the proceedings, with a view of determining whether it was necessary to lease, mortgage or sell the real estate of the deceased to pay his debts, as provided by section 13. (Id., p. 102.) If a sale is not ordered, but the premises are required to be mortgaged or leased to secure the necessary sum to pay the debts, then the money realized by such mortgage or lease is not brought into the Surrogate's Court at any time, but the same is to be paid over by the administrators to and among the creditors whose debts were passed upon and established on granting the order for making the lease or mortgage. (Secs. 21, 22, 35, Id., pp. 103, 104, 106.) In cases of sale of the premises then it becomes necessary that further steps be taken to ascertain who are the creditors having claims on the estate of the deceased, and the list of creditors made and recorded by the surrogate on the prior hearing is to be regarded as correct and cannot again be controverted, unless upon newly discovered evidence. (Secs. 38, 39, 40, 41, 42, Id., pp. 106, 107.) After the surrogate has paid all the charges and expenses incident to the sale, and has satisfied the widow's right of dower, if one exists, the balance of the fund is to be divided to and among the creditors and the heirs-at-law of the deceased according to their respective rights and interests. (Secs. 36, 42.)

This reference to the statute has been made with so much particularity with a view of having it appear in this connection, that neither the creditors nor heirs-at-law have a legal title to any fixed or definite portion of the fund derived from the sale, so that either of them could maintain a suit at law in his own name, on the official bond of the surrogate, and recover damages for an ascertained sum. The claimant must establish his debt in the Surrogate's Court in the mode and manner and within the time fixed by the statute, before he can maintain an action in another tribunal and recover a share of the fund.

As to the surplus moneys realized on the mortgage sale, they on being paid into the Surrogate's Court, were subject to like distribution to and among the parties entitled thereto, in the same manner

as the moneys derived from the sale of the real estate.. (Chap. 170, Laws of 1870.)

As both funds were in the hands of the late surrogate at the time of his death, this action was properly brought in the name of the people as the trustee of an express trust, as permitted by section 449 of the Code of Civil Procedure.

Before a surrogate enters upon the discharge of his official duties he is required to give a bond, with two sureties, running to the people, "conditioned for the faithful performance of his duty and for the application and payment of all monies and effects that may come into the hands of such surrogate in the execution of his office." (2 R. S., 382, § 87, m. p.) The purpose of exacting from the surrogate a bond of this nature is to indemnify all persons against loss, which otherwise might happen by the official misconduct of the surrogate. Individuals having a pecuniary interest in the honest and faithful performance of the official duties of a surrogate have no right to demand security for their protection. All moneys collected on the official bond, in an action in the name of the people, is for the benefit of the persons entitled to indemnity, and is, as a matter of course, when collected, ordered by the court to be paid over to such persons, when their interests are ascertained, or to the incumbent of the office for his official administration. The form and condition of the undertaking, as well as the object and purpose of the same, brings the case within the letter of the statute, which is worded, viz.: "A person with whom or in whose name a contract is made for the benefit of another is a trustee of an express trust, within the meaning of this section."

The creditors and heirs-at-law are entitled to all the moneys which came to the hands of the late surrogate belonging to the estate of Finley. They are the *cestuis que trust*, for whose benefit the people hold the bond given for the faithful discharge of his duties. This provision of the Code, concerning parties to actions, should receive a broad and liberal construction in all instances where the action is founded on an official bond to recover money for the benefit of those who are entitled thereto.

The covenants contained in the bond are to and with the people. A recovery in this action of a sum equal to the amount of the sum belonging to the estate of Finley, which the late surrogate received

and which has not been accounted for, would be in strict conformity with the letter of the undertaking.   It has been frequently adjudicated that bonds running to the people, executed by the obligors for the benefit of others, may be prosecuted in the name of the people as the trustee of an express trust, without joining the person for whose benefit the action is prosecuted.

In the case of *The People* v. *Norton* (5 Seld., 176), a bond was given by a trustee in the matter of a private trust, running to the people, and in an action against the sureties on such bond to recover moneys misappropriated by the trustee, it was held that the action was properly brought in the name of the people and was authorized by section 113 of the old Code, the provisions of which are exactly the same as those of section 449 of the present Code.

In *People* v. *Townsend* (37 Barb., 520), the action was against the sureties, on an administrator's bond, and the sum recovered was the sum which had been previously decreed by the surrogate to be paid by the administrator on his final accounting, and it was held that the action was properly brought in the name of the people.

The statutes require an administrator's bond to be " conditioned that such administrator shall faithfully execute the trust reposed in him as such, and also that he shall obey all orders of the surrogate touching the administration of the estate submitted to him."

In the case last cited by the final decree the balance found for distribution was a very large amount, and the same was directed to be paid to and among several persons entitled thereto, and the particular sum given to each was fixed and determined by the decree, and the whole sum was ordered to be distributed.   These cases have never been overruled so far as I can discover, but have been frequently referred to with approval. (See *Cridler* v. *Curry*, 66 Barb., 336; *Dayton* v. *Johnson*, 69 N. Y., 428; *People ex rel. Becar* v. *Struller*, 16 Hun, 234; *People* v. *Groat*, 22 id., 166.)

In the case before us the present surrogate is the proper custodian of the fund, the *corpus* of which cannot be immediately paid over to any of the claimants.   It must be kept and cared for until some future time, when in the course of due procedure it should be distributed among the real owners.   A recovery in this action will result in restoring the fund to the proper custodian, for the benefit of the beneficiaries, and will bar any action which may be brought

by them, or either of them, on the official bond of the late surrogate, founded upon the breach of duty set forth in the complaint in this action.

It was held by the learned judge at Special Term, that the right of action under the provisions of the present Code (§ 1886) was limited to the person injured by the default or misconduct of the surrogate in office. This provision is not new in any sense, and is but a re-enactment of certain provisions of the Revised Statutes on the same subject found in sections 19 and 20, 2 Revised Statutes, marginal page 479.

The phrase in the Revised Statutes, " the party aggrieved thereby may apply to the Court of Chancery for leave to prosecute the official bond," and the one " the person injured thereby may apply for leave to prosecute the delinquent's official bond," have the same meaning and is a change of verbiage only and not of substance.

There is no provision of law prohibiting actions being prosecuted in the name of the people on official bonds or limiting the right of recovery thereon, to parties injured by a breach thereof. If funds in the custody of a surrogate are lost or misapplied by his negligence or malfeasance, the remedy upon his official bond should not be suspended to await the determination of other proceedings, pending or to be instituted with a view of determining the rights of claimants to the fund ; but there should be a prompt and vigilant pursuit of the defaulting officer and his sureties for the benefit of those having an interest in the same. Cases may arise where claimants to the funds are unknown, and it would be a reproach to the laws if dishonest and corrupt officials could not be prosecuted and compelled to account for misapplied moneys, until such parties appear and establish their title.

As we hold that this action is properly brought in the name of the people, the defense interposed as a bar to a recovery must be examined, although the trial court dismissed the complaint, upon the sole ground, that the plaintiff had failed to establish a cause of action.

The appeal book does not contain any of the evidence ; the case states that proofs were given, tending to establish all the facts set forth in the decision of the court. In disposing of this question we shall confine our examination to the subject of the surplus moneys arising on the sale in the foreclosure suit. The money

realized on the sale of the lands ordered by the Surrogate's Court was, in the first instance, paid over to the then acting surrogate, the district attorney for Livingston county, and the certificate of deposit which is mentioned in the statement of facts was issued to him, and made payable to his order as acting surrogate, and by him indorsed and delivered to the surrogate on his assuming the duties of his office. The findings of fact on this subject by the trial court are so stinted, and as the legal questions involved do not appear to have been specifically passed upon, the question of the surrogate's liability for the loss of these moneys can with propriety, be deferred for consideration on the trial to be ordered.

The defendants' claim that upon the facts as found and set forth in the decision, a perfect and legal defense was made out and their principal was exonerated from all liability on account of the loss of the funds. It is argued in support of this proposition, that the liability of the surrogate for the loss of the money in his custody is to be measured by the rules of law applicable to a case of loss of property by a trustee or bailee, and that he is only chargeable for his own negligent and careless acts or malfeasance in office. This in substance is the rule of the common law in determining the liabilities of public officers for breach of official duty.

In *United States* v. *Thomas* (15 Wall., 337), the learned judge who prepared the opinion of the court states the rule as follows, viz: "The general rule of official obligation, as imposed by law, is that the officer shall perform the duties of his office honestly, faithfully and to the best of his ability. This is the substance of all official oaths. In ordinary cases to expect more than this would deter upright and responsible men from taking office. This is substantially the rule by which the common law measures the responsibility of those whose official duties require them to have custody of property, public or private. If in any case a more stringent obligation is desirable, it must be prescribed by statute or exacted by express stipulation." (Story on Bailments, 620.)

If this rule be accepted as the measure of the obligations of the late surrogate concerning the loss of funds, then on the facts as found no defense is established. The finding on the subject is this and no more, that Cone was a banker in good standing and credit, doing a general banking business at Geneseo; that the several

deposits of money so made as aforesaid, were made in good faith and with the intention of benefiting the creditors of the estate of Finley, and that the surrogate had no knowledge of the insolvency of Cone before his failure or assignment.

The default of the surrogate having been fully established, the burden of proof was cast on the defendants, to establish that the loss of the funds occurred under such circumstances as to exempt their principal from liability ; that he had acted in the management of the fund without fault and was free from all negligence. No such fact is found, nor any which in legal effect is the equivalent of such a finding.

Persons in a private or official capacity may act in entire good faith and with a purpose of benefiting those to be affected by their acts, and yet be guilty of negligence and carelessness in the performance of the act in question. Where the interests of parties depend upon the intelligent, cautious and vigilant action of another, who holds towards him the relation of trustee or bailee, the latter, in case of loss or destruction of property while in his custody, cannot escape liability to the injured party by the plea that he acted in good faith.

The defendants' liability is not, however, limited by the rule of the common law, but is fixed and measured by the condition of their bond, which is, "that their principal will faithfully perform the duties of his office and make application and payment of all moneys and effects that may come to his hands in the execution of his office." This is a positive and unequivocal promise made by the defendants as obligors, mentioned in a bond, that the surrogate shall pay over all moneys which may come into his custody in his official capacity. This obligation was assumed in compliance with a legal requirement exacted by the State from a public officer, and nothing will excuse its performance but a loss or destruction of the money which may have come to the hands of the surrogate by the act of God or of the public enemy. ( *U. S.* v. *Prescott,* 3 How. [U. S.], 578 ; *U. S.* v. *Morgan,* 11 id., 154 ; *U. S.* v. *Dashiel,* 4 Wall., 182 ; *U. S.* v. *Thomas,* 15 Wall., 337 ; *State* v. *Harper,* 6 Ohio St., 607 ; *Muzzy* v. *Shattuck,* 1 Denio, 233 ; *Inhabitants of Hancock* v. *Hazzard,* 12 Cush., 112.)

New trial granted, with costs to abide the event.

SMITH, P. J., and HARDIN, J., concurred in the result.

Judgment reversed and new trial ordered, costs to abide event.